UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAPA BERG, INC. and JAMES D. PAPA d/b/a PAPA HAYES MUSIC d/b/a PAPA BERG PUBLISHING d/b/a GRAND THEFT PRODUCTIONS d/b/a GRAND THEFT RECORDS d/b/a NABE NABE MUSIC,<br><br>    Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., STEPHANIE MUSIC PUBLISHING INC., MICHAEL SEITZ a/k/a MICHAEL HAYES, and JAMES ALAN JOHNSTON,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:12-CV-2406-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Or, in the Alternative, Motion to Transfer Venue filed by Defendants World Wrestling Entertainment, Inc. ("WWE"), Stephanie Music Publishing Inc. ("Stephanie Music"), Michael Seitz a/k/a Michael Hayes ("Seitz"), and James Alan Johnston ("Johnston") (collectively "Defendants") on October 9, 2012 (doc. 10). For the reasons stated below, the Motion is **DENIED IN PART** and **GRANTED IN PART**. The Motion is **GRANTED** to the extent it seeks dismissal of all claims against Seitz and Johnston for lack of personal jurisdiction and improper service. As such, the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Seitz and Johnston. The Motion is also **GRANTED** to the extent it seeks dismissal of the Complaint's

1

contributory infringement claim. The Complaint's contributory infringement claim is **DISMISSED WITHOUT PREJUDICE**. The Motion is **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks dismissal of the Complaint's state law claims based on preemption. The state law claims are **DISMISSED** to the extent they seek recovery based on Defendants' use, reproduction, or distribution of the Protected Works. Defendants' other requests for relief are **DENIED**.

## I.

### BACKGROUND[1]

This case concerns Defendants' alleged unauthorized use of Plaintiffs' songs. Plaintiff James D. Papa ("Papa") is a musician and songwriter who has written or co-written several songs for professional wrestling and has operated under the names Papa Hayes Music, Grand Theft Productions, Grand Theft Records, and Nabe Nabe Music. Compl. ¶¶ 12-14. In October 1983, Papa and Defendant Seitz co-wrote the song "Badstreet USA," which came to be used as "entrance music" for certain professional wrestlers, including Seitz, wrestling under the name Michael Hayes. *Id.* at ¶ 13. In November 1983, Papa registered this song with Broadcast Music, Inc. ("BMI"), which collects license fees on behalf of songwriters, composers, and music publishers and then distributes the fees as royalties to members whose works have been performed. *Id.* ¶¶ 12-13. Although Papa has licensed his songs for use by others from time to time, he retained all publishing rights to Badstreet USA and several other songs at issue in the Complaint, which he refers to as the "Protected Works."[2] *Id.* at ¶¶

---

[1] The facts are derived from Papa Berg's Original Complaint filed July 17, 2012.

[2] The Protected Works include the songs Badstreet USA, Don't Step to Ron, Man Called Sting, Mr. Bang Bang, Master of the DDT, Freebird Forever, Simply Ravishing, Johnny B Bad, The Natural, The Dragon, He's Smokin, and Steinerized. *Id.* at ¶ 14.

14-15. Papa later transferred his rights in the Protected Works to Papa-Berg, Inc., a corporation of which Papa is the sole officer and director.[3] *Id.* at ¶ 12, 15.

On some unspecified date, the representative of the video game company THQ contacted Papa expressing interest in using Badstreet USA in a video game. *Id.* at ¶ 16. The representative made an offer to Papa for use of the song but later emailed Papa to confirm his ownership of the song, stating that her records showed that the song was owned by WWE. *Id.* Upon contacting BMI, Papa discovered that the song had been re-registered by WWE and had been given a new registration number, resulting in the royalties being directed to Defendants. *Id.* at ¶¶ 16-17. By the time Papa was able to correct the registration to properly reflect his ownership, the video game company had decided not to use the song. *Id.* After further investigation, Papa discovered that WWE had re-registered all of the Protected Works, listing Defendant Johnston or Defendant Seitz as "Songwriter/Composer" and Defendant Stephanie Music as publisher.[4] *Id.* at ¶¶ 18-20. Defendants have allegedly infringed the Protected Works by using them in a DVD and in classic wrestling matches broadcast on a WWE cable channel. *Id.* at ¶¶ 22-23. Papa also alleges that his Protected Works are being used as ring tones for cell phones without his authorization, though the Complaint does not state WWE's role in such use, other than to allege that WWE's erroneous registration has prevented him from receiving royalties for the ring tones. *Id.* at ¶ 24.

As a result of the above actions, Papa now brings claims for declaratory judgment of copyright

---

[3]The Court refers to all Plaintiffs collectively as "Papa."

[4]Although the Complaint is unclear regarding the relationship of the Defendants to each other, Defendants state that Stephanie Music is a wholly-owned subsidiary of WWE and Seitz and Johnston are current employees of WWE. Mot. Br. 1 (citing Mot. Ex. 1 ¶ 5; Mot. Ex. 2 ¶ 2; Mot. Ex. 3 ¶ 2).

ownership, copyright infringement, contributory copyright infringement, unfair competition, tortious interference with existing and potential business relationships, civil conspiracy, and money had and received. In response, Defendants filed their Motion to Dismiss on October 9, 2012, which is now ripe for disposition.

## II.

## LEGAL STANDARDS

A.    *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). To establish the Court's personal jurisdiction over a defendant, the plaintiff must make only a *prima facie* case of jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas' long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because Texas' long-arm statute has been held to extend to the limits of due

4

process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067-68 (citing, *inter alia*, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068 (citations omitted).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). Specific personal jurisdiction exists when the nonresident defendant's contacts with the forum state arise from or are directly related to the cause of action. *Gundle*, 85 F.3d at 205. In either context, the court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart*, 772 F.2d at 1192.

B.      *Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division where the action could have been brought originally, provided the transfer would be for "the convenience of parties and witnesses, and in the interest of justice." The burden falls upon the movant to demonstrate why the alternate venue is more appropriate. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008). To meet this burden, the movant must first prove

that the plaintiff could have originally filed his complaint in the transferee venue. *Id.* at 312. Next, the defendant must show good cause as to why the action should be sent to the transferee venue. *Id.* at 315. "[T]o show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, and in the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)).

In assessing the interests of convenience and justice, courts look to a series of private and public factors. *Id.* "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quotation omitted). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (citation omitted). The balance of these factors must clearly weigh in favor of transferring to the new venue. *Id.* If the transferee venue is not "clearly more convenient" than the chosen venue, the plaintiff's choice should not be disturbed. *Id.*

C.    *Motion to Dismiss pursuant to Rule 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches*

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.

## ANALYSIS

A.    *Personal Jurisdiction*

Defendants move to dismiss this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction. They argue that Papa cannot establish specific personal jurisdiction because they have not purposefully directed any activities at Texas and the claims do not arise out of any contacts with Texas. Defendants also argue that Papa cannot establish general personal jurisdiction because they lack the necessary continuous, systematic, and substantial contacts with Texas. Papa responds that the Court has specific personal jurisdiction over all Defendants pursuant to either the stream of commerce theory or the *Calder* effects test. Papa also argues that general personal jurisdiction is present. The Court will examine each Defendant's contacts to determine if personal jurisdiction exists.

1.      WWE Personal Jurisdiction

a)      Contacts

Papa alleges in his Complaint that WWE sold or caused to be sold works infringing his intellectual property in Texas, committed acts of infringement in Texas, created confusion regarding the Protected Works in Texas, and caused Papa to suffer injury in Texas. Comp. ¶ 10. Papa further states via affidavit that copies of two different allegedly infringing DVDs were purchased in Dallas, Texas and that the infringing cable television broadcasts were viewed in Irving, Texas, both by Papa. Pls.' Resp. Ex A at ¶¶ 4-5. Papa also alleges that WWE has engaged in continuous and systematic activities within Texas, purposefully availing itself of Texas laws. Compl. ¶ 10.

WWE admits to holding 24 of 241 WWE North American events in Texas in 2011 and that 17 of 249 total North American events were scheduled to take place in Texas in 2012. Mot. Ex. 1 at ¶ 13. From the events in Texas during 2011, WWE realized $5.1 million in net revenue, which represented only one percent of WWE's national net annual revenue for 2011. *Id.* at ¶ 15. WWE also states that WWE events are televised on broadcast, cable, and pay-per-view television throughout the United States, including a subscription service named "WWE Classics on Demand." *Id.* at ¶¶ 16-17. WWE also releases DVDs and Blu-rays of its programming, which are distributed through a third party to retail outlets across the United States. *Id.* at ¶ 18.

WWE states it "does not have any practice, policy, strategy, or goal to uniquely target Texas residents for the marketing, promotion, or sale of any television programming, pay-per-view programming, or of any consumer product, including DVDs of any of WWE events." *Id.* at ¶ 19. WWE is a Delaware corporation with its principal place of business in Stamford, Connecticut. *Id.* at ¶¶ 4, 10. WWE does not maintain a Texas office, own or lease Texas real estate, or a maintain

a Texas bank account, though it is registered to do business in Texas. *Id.* at ¶¶ 6-11.

        b)      Analysis

      Defendants argue that the Supreme Court's recent plurality opinion concerning personal jurisdiction, written by Justice Kennedy, requires a plaintiff to demonstrate more than the mere availability of goods or services in the forum state to confer personal jurisdiction. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2786-91 (2011)(plurality opinion). But Justice Kennedy's opinion was not joined by a majority of the Justices and, as such, Justice Breyer's concurrence in judgment was necessary to reach the Court's holding that New Jersey did not have personal jurisdiction over the foreign manufacturer in *McIntyre*. *Id.* at 2785, 2791. Thus, the precedential value of *McIntyre* is not immediately apparent, especially considering that the Fifth Circuit has not yet addressed this case.

      In *McIntyre*, a New Jersey resident was injured by an English manufacturer's machine which was neither marketed in New Jersey or shipped there, though the manufacturer did sell its machines to a U.S. distributor. *Id.* at 2786. Both Kennedy's plurality and Breyer's concurrence rejected a rule that jurisdiction over a foreign manufacturer is proper so long as the manufacturer "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." *Id.* at 2785; 2793. Justice Kennedy's plurality opinion went further in explaining that a foreign company must *purposely* direct its activities at a forum statute before personal jurisdiction is found. In contrast, Justice Breyer "merely found that the plaintiff had failed to present evidence of purposeful availment under *any* of the Court's past opinions." *Ainsworth v. Cargotec USA, Inc.*, Civ. Action No. 2:10-cv-236-KS-MTP, 2011 WL 4443626, at *7 (S.D. Miss. Sept. 23, 2011). Breyer reiterated the Supreme Court's previous

findings that a single isolated sale is not sufficient to confer personal jurisdiction over a foreign defendant, even if the product is put in the stream of commerce, as plaintiffs must show that the sale was part of the "regular flow or regular course" of sales in the state; show "something more" such as special state-related design, advertising, advice, or marketing; or show evidence that the manufacturer somehow purposefully availed itself of the privilege of conducting activities within the state or delivered its goods in the stream of commerce with the expectation that they will be purchased by users within the state. *McIntyre*, 131 S.Ct. at 2792 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 111-12, 117, 122 (separate opinions of O'Connor, J.; Brennan, J.; and Stevens, J); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). In essence, Breyer declined to announce any new rule regarding the stream of commerce. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 867 (E.D. Tex. 2012) ("Justice Breyer specifically declined to announce a new rule in stream of commerce cases" as "'resolving this case requires no more than adhering to our precedents'") (quoting *McIntyre*, 131 S.Ct at 2792).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Garland v. Roy*, 615 F.3d 391, 399 (5th Cir. 2010) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1968)). Because Justice Breyer's holding is narrowest, it holds precedential authority. *See, e.g.*, *Frito-Lay*, 867 F. Supp. 2d at 867 (Breyer concurrence in *McIntyre* controls); *Graham v. Hamilton*, Civ. Action No. 3:11-609, 2012 WL 893748, at *3-4 (Mar. 15, 2012); *Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 662 (E.D. Tex. 2011); *Dram Techs. LLC v. Am. II Group, Inc.*, 2:10-CV-45-TJW, 2011 WL 4591902, at *2 (E.D. Tex. Sept. 30, 2011); *Ainsworth*, 2011 WL 4443626, at *6. *But see*

10

*Graham*, 2012 WL 893 748, *3 n.2 (discussing how some district courts within Fifth Circuit have concluded that *McIntyre* overrules Fifth Circuit's prior minimum contacts precedent, while other district courts "have concluded that pre-*McIntyre* Fifth Circuit precedent continues to apply"). Thus, Justice Kennedy's opinion does not overrule existing Fifth Circuit authority regarding personal jurisdiction because it is Justice Breyer's opinion, which was more narrow and relied entirely on existing precedents, that is the precedential holding of the Supreme Court. Further, in declining to announce a new rule, Breyer left prior Supreme Court decisions on personal jurisdiction, and the Fifth Circuit's cases interpreting them, untouched. *See Ainsworth*, 2011 WL 4443626, at *7 ("As Justice Breyer declined to choose between the *Asahi* plurality opinions, *McIntyre* is rather limited in its applicability. It does not provide the Court with grounds to depart from the Fifth Circuit precedents establishing Justice Brennan's *Asahi* opinion as the controlling analysis.").

Having determined the applicable law, the Court turns to Plaintiffs' argument that this Court has specific personal jurisdiction over WWE. Specific jurisdiction in the Fifth Circuit is based on a three-step analysis:

> (1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Luv n' care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). As for the first step, the Fifth Circuit "has consistently held that mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* at 470 (citation omitted). In the Fifth Circuit's view, such a rule applies

11

given its determination that "[w]here a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Id.*[5] (citation omitted).

Here, WWE admits that it broadcasts its programming and sells its products nationwide. Papa also shows that he purchased copies of the allegedly infringing DVDs in Dallas, Texas and that he viewed the infringing broadcasts in Irving, Texas. Pls.' Ex. A at ¶¶ 4-5. WWE's argument that it did not have any practice or policy uniquely targeting Texas residents for the marketing, promotion, or sale of its programming or products is unavailing. By selling its products and broadcasting its television content in Texas, even through third party distributors or cable operators, WWE knowingly benefitted from Texas' market for WWE's products and therefore it is only fitting that WWE be amenable to suit in Texas. *See Luv n' care*, 438 F.3d at 470. The fact that Papa bought the alleged infringing DVDs at a "large chain store" in Dallas, Texas also suggests that such sales are part of the regular flow or course of sales in Texas and not an isolated incident. *See* Pls.' Resp. Ex. A at ¶ 4.

As for the second step of the specific personal jurisdiction analysis, Papa's claims center on the alleged infringement contained in the DVDs and broadcasts that traveled into Texas through the stream of commerce. Thus, Papa's causes of action arise out of WWE's contacts with Texas and as such, the contacts are sufficient to confer personal jurisdiction. *See Luv n' care*, 438 F.3d at 473.

The third and final step in the specific jurisdiction analysis is whether the exercise of

---

[5]Given that the Court has found that *McIntyre* does not disturb other Supreme Court precedent or Fifth Circuit precedent on personal jurisdiction, the Court rejects Defendants' argument that *Luv n' care* is no longer good law.

jurisdiction would "offend traditional notions of fair play and substantial justice." *Id.* "When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Id.* (citing *Nuovo Pignone*, 310 F.3d at 382).

Here, beyond their arguments concerning the first two steps of the analysis, Defendants fail to argue that the exercise of jurisdiction would be unreasonable and therefore fail to carry their burden. The Court concludes, based on the foregoing analysis, that Plaintiffs have met their *prima facie* burden to establish this Court's personal jurisdiction over WWE.[6] As such, the Court **DENIES** Defendants' Motion to Dismiss to the extent it seeks dismissal of the Complaint as to WWE and Stephanie Music for lack of personal jurisdiction.[7]

In making this determination, the Court also rejects Defendants' separate argument that the stream of commerce theory of personal jurisdiction does not apply in the copyright context. *See* Mot. Br. 6-7. In *Luv n' care*, the Fifth Circuit specifically applied the stream of commerce theory in a copyright case, and the Court disagrees that *Luv n' care* has no applicability here "because the case involved the design of physical products." *See* Mot. Reply 3-4. The Court notes that Papa's claims are based in part on two allegedly infringing DVDs that entered the stream of commerce, similar to

---

[6]As for Defendant Stephanie Music, the Court need not make an independent determination of jurisdiction over Stephanie because Stephanie Music is not an operating company, has no employees, and now functions only as a "doing business as" name used to account for WWE's receipt of music publishing income. *See* Mot. Ex. 1 at ¶ 5. Therefore, because Stephanie Music does not exist separately from WWE, the Court's determination of personal jurisdiction over WWE suffices for any claim that may be directed at Stephanie Music.

[7]Because the Court has determined it may properly maintain personal jurisdiction over WWE based on the stream of commerce theory, the Court need not examine the *Calder* effects test nor general personal jurisdiction in regards to WWE.

the alleged infringing bottles in *Luv n' Care*. The Court also notes that another case Defendants cite,

*Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993), is distinguishable. The *Luv n' care* court

explained that in *Ham*, "the allegedly infringing song was different from the one that had been

distributed through the stream of commerce to the forum state," and the court might have found

jurisdiction "if the song distributed in Texas and the allegedly infringing song were one and the

same." *Luv n' Care*, 438 F.3d at 473 (citing *Ham*, 4 F.3d at 416 n.13). Here, at least one of the

allegedly infringing songs is the same song that was distributed through the stream of commerce to

Texas on two DVDs, and all the Protected Works were allegedly broadcast in programs on WWE's

cable channel which were viewed in Texas.

The other cases Defendants cite in support of this argument are non-binding, and the Court

disagrees with them to the extent they hold that the stream of commerce theory does not apply in

copyright cases. Further, the one case they cite from the Northern District of Texas is inapposite.

*See M3Girl Designs LLC v. Purple Mountain Sweaters*, Civ. Action No. 3:09-cv-2334-G, 2010 WL

3699983 (N.D. Tex. Sept. 13, 2010). In *M3Girl Designs*, the defendants made only one sale to Texas

residents, and that sale did not involve the copyrights at issue; instead, the suit was over harm

resulting from the defendants' maintenance of a website that contained allegedly infringing material

and was accessible in Texas. *Id.* at *7. Thus, *M3Girl Designs* is distinguishable from the instant case

for the same reason *Ham* is distinguishable.

2.    The Individual Defendants

Defendants Seitz and Johnston (the "Individual Defendants") move to dismiss Papa's causes

of action for lack of personal jurisdiction pursuant to Rule 12(b)(2). The Court now examines the

Individual Defendants' contacts with Texas. In the Complaint, Papa fails to allege the Individual

14

Defendants' citizenship and fails to allege any contact whatsoever with Texas on behalf of either Individual Defendant. In fact, throughout the Complaint, the only references to either Individual Defendants state that Defendant Seitz co-wrote Badstreet USA and used the song as entrance music and state that when the Protected Works were allegedly re-registered, the songwriter/composer name was changed from Papa to either James Alan Johnston or Michael Seitz. *See* Comp. ¶¶ 19-20. There is no allegation that either Individual Defendant has ever made contact with Texas, nor is there any mention that either Individual Defendant participated in the alleged re-registering of the Protected Works or promotion of the DVDs and programming that allegedly used the Protected Works.

Both Individual Defendants have submitted affidavits. Defendant Johnston[8] is employed as the Music Director of WWE. His affidavit demonstrates he has no relevant contacts with Texas and that he was never served with the complaint or summons in this lawsuit. Mot. Ex. 2 at ¶¶ 5-15. Michael Seitz is employed by WWE as the Vice President of "creative writing/booking." Mot. Ex. 3 at ¶ 2. According to Seitz, he co-wrote all of the Protected Works with Papa. *Id.* at ¶ 4. During the late 1980's, Seitz would commute to Dallas for two-week blocks of time from his Georgia residence and stay with Papa during the time he was in Dallas. *Id.* ¶ 6. Since 2011, Seitz has been to Texas sixteen times for WWE events, but otherwise has not had any substantive contacts with Texas in over twenty-five years. *Id.* ¶¶ 6-15. Seitz has also not been served with the Complaint or a summons in this case. *Id.* at ¶ 16.

a)      Specific Personal Jurisdiction

Despite these minimal contacts, Papa argues that personal jurisdiction is proper under *Calder*

---

[8]The Court assumes that affiant Jim Johnston is one and the same as Defendant James Alan Johnston.

*v. Jones*, 465 U.S. 783, 789 (1984). Under *Calder*, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789-90). Papa argues that Defendants' actions "were calculated to injure one specific person in the world – Papa in Dallas, Texas," such that "Defendants should reasonably have anticipated being haled into a Texas court for their actions." Pls.' Resp. 8-9.

However, courts have explained that even after *Calder*, personal jurisdiction under the effects test is rare, and plaintiffs must still show that a defendant purposefully availed itself of the benefits of the forum state or purposely directed conduct at the forum state. *See Stroman Realty v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008); *see also Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 843-45 (N.D. Tex. 2011) (the effects test "is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum, and the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*") (citing, *inter alia*, *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (plaintiff must show purposeful availment besides the plaintiff's residence in the state and the foreseeability of defendant's actions causing injury in Texas)). While the Court has already determined that personal jurisdiction is proper as to WWE under a stream of commerce theory, Papa has not established through a *prima facie* case that Seitz or Johnston put the allegedly infringing works into the stream of commerce or specifically directed any conduct towards Texas. Nor has Papa established that Papa's causes of action arose from any of Seitz's or Johnston's contacts with Texas. In light of the full range of Seitz's

16

and Johnston's minimal contacts with Texas, even considering the alleged harm to Papa, the effects test alone does not support personal jurisdiction over the Individual Defendants in this case. Overall, Papa has not established a *prima facie* case of specific personal jurisdiction over the Individual Defendants.

      b)      General Personal Jurisdiction

General personal jurisdiction exists "when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Id.* (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001). Here, Johnston has had no contact with Texas in at least ten years, and Seitz's only contact in the last 25 years has been sixteen trips for WWE live events, which do not have any apparent connection with the Protected Works. As such, neither Johnston nor Seitz have had the "substantial, continuous, and systematic" contacts required for general jurisdiction. *See Helicopteros*, 466 U.S. at 411, 416-19 (no general jurisdiction in Texas for foreign defendant despite purchasing helicopters and parts from a Texas company, sending prospective pilots to Texas for training, sending management and maintenance personnel to Texas for consultations, and receiving checks drawn upon a Texas bank).

Because the Court lacks both specific and general personal jurisdiction over Johnston and Seitz, both of the Individual Defendants are hereby **DISMISSED** pursuant to Defendants' Rule 12(b)(2) Motion.

c)      Jurisdictional Discovery

To the extent Plaintiffs' Response filed November 6, 2012 requests additional time to obtain jurisdictional discovery from the Individual Defendants, such request is **DENIED**. A court may grant jurisdictional discovery when the plaintiff has established a "preliminary showing of jurisdiction" over the defendant. *EsNtion Records, Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027-L, 2008 WL 2415977, *6 (N.D. Tex. June 16, 2008) (denying jurisdictional discovery regarding nonresident parent corporation) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Here, Papa has not shown a preliminary finding of jurisdiction. Rather, he merely states that he has "not been afforded an opportunity to obtain any discovery" to establish Seitz's and Johnston's contacts with the State of Texas. Resp. 11. Further, Papa's arguments in support of jurisdictional discovery do not show that such discovery would add any significant facts to his jurisdictional claims. *See Kelly v. Syria Petroleum Dev. B.V.*, 213 F.3d 841, 857-58 (5th Cir. 2000) (district court did not abuse discretion in denying jurisdictional discovery given that plaintiffs offered no basis to show that proposed depositions of corporate representatives would contradict those representatives' sworn declarations). As such, the Court **DENIES** Papa's request for jurisdictional discovery.

B.    *Service*

The Individual Defendants also seek dismissal of the Complaint due to insufficient service of process pursuant to Rule 12(b)(5). Although the Court has already dismissed Papa's Complaint as to the Individual Defendants due to lack of personal jurisdiction, the Court also **GRANTS** Defendants' Rule 12(b)(5) Motion to Dismiss the Individual Defendants for insufficient service of process. While a court may extend the time for service of process, Papa never formally moved for additional time to serve Seitz and Johnston. Further, Papa has not shown good cause for his failure

18

to serve the Individual Defendants. In the Court's view, Papa's excuse, that he had not served the Individual Defendants because he intended to seek discovery from WWE regarding their service information and had not had this opportunity due to WWE's extension of time to respond to the Complaint, is not good cause. *See* Pls.' Resp. 14; *see also Gartin v. Par Pharm. Cos.*, 289 F. App'x 688, 692 (5th Cir. 2008) (good cause under Fed. R. Civ. P. 4(m) requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice") (citation omitted). The Court also declines, in its discretion, to extend the time for service on the Individual Defendants. Having filed the Complaint, Papa was required to either serve Seitz or Johnston within the deadline for service or promptly request an extension when it appeared he would not be able to serve these individuals within the deadline. Due to this failure, the Court **DISMISSES WITHOUT PREJUDICE** Papa's claims as to Seitz and Johnston due to insufficient service of process.

C.     *Motion to Transfer Venue*

Defendants move to transfer this action under 28 U.S.C. § 1404(a) to a federal district court in Connecticut. The burden falls on Defendants, as the movants, to demonstrate why the alternative venue is more appropriate. *In re Volkswagen*, 545 F.3d at 314 n.10. Defendants must prove that Plaintiffs could have originally filed suit in Connecticut and show good cause as to why the action should be sent to Connecticut. *See id.* at 312, 315. The Court will now consider the public and private factors to determine if the interests of convenience and justice necessitate transfer of this action.

Defendants argue that all relevant evidence and witnesses are located either at WWE's principal place of business in Stamford, Connecticut or at BMI, located in New York. Thus,

according to Defendants, access to proof, availability and cost of witnesses, and the avoidance of other practical problems make Connecticut the more convenient forum. However, in the Court's view, travel by witnesses and parties in this case will be necessary whether venue is situated in the Northern District of Texas or in Connecticut. It does appear that more witnesses and proof will be found in Connecticut or in nearby New York, so the private interest factors do weigh at least slightly in favor of transfer. However, Defendants' cursory discussion of the private interest factors simply does not show that the private interest factors clearly weigh in favor of transfer.

As for the public interest factors, Defendants argue that because the facts of the Complaint occurred outside Texas, this lawsuit constitutes an unfair burden to Texas taxpayers. Defendants do not address the other public interest factors. However, as noted by Plaintiffs, Texas has a definite interest in ensuring that one of its citizens be able to prosecute his claims at home. Defendants have also not shown that issues of court congestion, familiarity of the forum with the law of the case, or conflict of laws favors transfer of the case to Connecticut. As such, Defendants have not shown that the public interest factors weigh in favor of transfer.

Overall, looking at the public and private interest factors, Defendants have failed to carry their burden to show good cause why this action should be transferred to Connecticut – they have not shown that the private and public interest factors clearly weigh in favor of transfer. For these reasons, Defendants' Motion is **DENIED** to the extent it seeks transfer of venue pursuant to 28 U.S.C. § 1404(a).

D.    *Motion to Dismiss pursuant to Rule 12(b)(6)*

    1.    <u>Copyright Claims</u>

Defendants move to dismiss Papa's claims of direct and contributory copyright infringement.

20

Defendants argue that Plaintiffs only generically allege that Defendants infringed the Protected Works and that Plaintiffs fail to identify which Protected Works were infringed, on what WWE broadcasts or on which cell phone ring tones, and when these alleged infringements occurred. As for the contributory infringement claim, Defendants argue Plaintiffs have not alleged any particularity or differentiation between each Defendant. Plaintiffs retort that they have named the twelve songs that were allegedly infringed by Defendants and that they have met the pleading requirement for both their direct and contributory copyright infringement claims.

"To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying." *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001). Registration of a copyright with the United States Copyright Office is *prima facie* evidence of ownership of a valid copyright. 17 U.S.C. § 410(c). To establish unauthorized copying by a defendant, a plaintiff must prove (1) factual copying and (2) that the infringing work is substantially similar to the copyrighted work. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Factual copying may be inferred from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Peel*, 238 F.3d at 394.

Plaintiffs have adequately pled the first requirement of their direct infringement claim, as they have named the twelve Protected Works and alleged registration of the relevant copyrights. *See* Comp. ¶¶ 14, 27. Papa has also alleged that WWE had access to the Protected Works given their past public use at professional wrestling events and the inclusion of at least some of the songs on the album Slam Jam I in 1992. *Id.* at ¶¶ 13-15. As for probative similarity, Plaintiffs allege that Defendants manufactured, sold, and/or distributed items containing exact copies or substantially similar copies of the original recordings, including using the song Badstreet USA to promote two

21

DVDs and playing the Protected Works on WWE's cable channel. *Id.* at ¶¶ 22-23, 35; *see also* Pls.' Resp. Ex. A at ¶¶ 4-5. As such, Papa has sufficiently alleged unauthorized copying through WWE's access to the copyrighted works prior to creation of the infringing work and probative similarity between the two. *See Peel*, 238 F.3d at 394. Because Plaintiffs have adequately alleged each element of direct copyright infringement, Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' direct copyright claim.

As for contributory copyright infringement, a defendant is liable for contributory copyright infringement "when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (citation omitted). Even assuming Plaintiffs have adequately plead how each Defendant had knowledge of the infringing activity, the Complaint does not allege how Defendants either induced, caused, or materially contributed to infringing conduct of another. *See Alcatel*, 166 F.3d at 790. Rather, Papa's claims in the Complaint appear to be based on the alleged acts of the Defendants that directly infringed Papa's copyrights.[9] As such, Plaintiffs' contributory copyright infringement claim is **DISMISSED WITHOUT PREJUDICE**.

> ## 2.      Copyright Preemption of State Law Claims

Defendants argue that all of Plaintiffs' state law claims are preempted by the Copyright Act's preemption provision, 17 U.S.C. § 301(a), given their contention that each of the state law claims are predicated on Defendants' alleged misuse of the Protected Works. In response, Papa argues that

---

[9]Papa does not make any specific arguments in response to Defendants' argument that the contributory infringement claim should be dismissed, responding only to Defendants' arguments regarding direct infringement.

Defendants' characterization "ignores a key element of Plaintiffs' complaint, namely that Defendants also improperly re-registered the Protected Works at BMI and have thus engaged and are engaging in acts of unfair competition, unlawful trading on Plaintiffs' goodwill and reputation in the industry." Pls.' Resp. 22-23. In his view, "Defendants' tortious attempt to divest Plaintiffs of royalties for use of the Protected Works is separate and apart from their unauthorized use of the Protected Works in their DVDs and television programming," and the use of the Protected Works forms the basis for copyright infringement while the re-registering of the Protected Works forms "an additional basis for the remaining state law claims." *Id.* at 23.

Courts in the Fifth Circuit apply a two-step test to determine if a state law cause of action is preempted by Section 301(a). To be preempted, first the cause of action must fall "within the subject matter of copyright," and second, the cause of action must "protect[] rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. 1995). A state-created right is equivalent to these rights "if the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (citations omitted). The "extra-element" test is used to determine whether the protected rights under state law are equivalent to the rights protected under the Copyright Act. Under this test, a state claim is equivalent if it involves "'elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act.'" *Daboub*, 42 F.3d at 290 (citation omitted).

Here, the causes of action all concern Papa's rights in his songs and Defendants' violations of these rights, such that the claims are clearly within the subject matter of copyright. *See* 17 U.S.C. § 102(a)(2). As such, the first step of the Fifth Circuit's test is satisfied. Thus, the Court must

determine whether Papa's state law claims are equivalent to any of the exclusive rights of copyright.

Moving to the second step, Papa's state law claims are based on both his allegations that Defendants used the Protected Works without his consent and also his allegations that Defendants re-registered the Protected Works. To the extent that the state claims are based on Defendants' reproduction or distribution of the Protected Works, they are equivalent to copyright and thus preempted. *See, e.g., M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 792 (S.D. Tex. 2010) (unfair competition by misappropriation claim preempted as neither the element requiring the investment of extensive time, labor, skill, and money nor the requirement that the defendant use the product in competition with plaintiff established the necessary qualitatively different element) (citing *Alcatel*, 166 F.3d at 789); *id.* at 788-90 (tortious interference claims preempted to the extent they were based on plaintiff losing benefits flowing from its exclusive right to copyrightable material as "the additional intent elements required in tortious interference claims go merely to the scope of the right, and do not change the *nature* of the action") (citations omitted); *id.* at 791 (civil conspiracy claim preempted to the extent it was based on an agreement to copy and use copyrightable material, as "the intent element of the conspiracy does not constitute qualitatively different conduct" than a copyright claim) (citations omitted); *Ledesma v. D.R. Horton, Inc.*, No. SA-08-CA-128-OG, 2008 WL 1912531, *2 (W.D. Tex. Apr. 29, 2008) (quasi-contract claims preempted by copyright where core of plaintiff's theory relates to defendant's profiting from unauthorized use of plaintiff's intellectual property) (citing, *inter alia, Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 769 (N.D. Tex. 2006)). This holding also applies to the extent the state claims are based on Defendants' re-registration of the Protected Works and their subsequent reproduction or distribution of the Protected Works, as there Papa also seeks to protect rights equivalent to copyright.

However, Papa's state law claims are not preempted to the extent they seek recovery based on Defendants' re-registration and the subsequent diversion of royalties from third parties not related to Defendants' use or distribution of the Protected Works. Such claims are not based on Defendants' unauthorized reproduction or use of Papa's copyrighted works, but rather on receipt of funds from BMI without any further action by Defendants. Thus, as one example, Papa may proceed with his state claims where a third party used one of the Protected Works and Papa did not receive the royalty solely because the copyright was now re-registered to Defendants.[10] In contrast, Papa may not proceed with his state claims where they are based on Defendants' use of the Protected Works or Defendants' licensing of the Protected Works to third parties, even where the third parties contracted with Defendants due to the improper re-registration, as these claims are equivalent to the rights protected by copyright.

Given that the Court has found that Papa's state law claims are largely preempted, the Court does not consider Defendants' separate arguments that Papa fails to state a claim for tortious interference with existing and potential business relationships and civil conspiracy. *See* Mot. Br. 17-20.

3.      Statute of Limitations

Copyright claims are subject to a three-year statute of limitations. *See* 17 U.S.C. 507(b) (civil actions subject to three-year limitations period); *see also Jaso v. Coca-Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011) (copyright case citing statute). Further, "[r]ecordation of a document in the

---

[10]It is unclear whether Papa has in fact lost any royalties solely because of any third party's use of the Protected Works after re-registration not connected to Defendants' use, reproduction, or distribution of these works.

Copyright Office gives all persons constructive notice of the facts stated" in a properly recorded document.[11] 17 U.S.C. 205(c); *Daboub*, 42 F.3d at 291 (citing statute).

The Court does not doubt Papa's claims that he did not discover WWE's alleged tortious acts until late 2010, less than three years prior to the filing of the Complaint. *See* Pls.' Resp. Ex. A ¶ 4. Nevertheless, the Complaint, while alleging that Defendants' registration was improper, admits on its face that all of the Protected Works were re-registered under the name of Michael Seitz or James Alan Johnston as songwriters and composers with Stephanie Music as publisher. *See* Compl. ¶¶ 17-20. Thus, Papa had constructive notice of Defendants' improper registration as of the date of re-registration such that the discovery rule would not salvage any claims that would otherwise be time-barred, at least if Defendants had re-registered the Protected Works more than three years prior to the filing of this suit. *See Daboub*, 42 F.3d at 291. However, based on the information before the Court, it cannot tell *when* any of the protected works were re-registered such that Papa had constructive notice. Defendants have also failed to provide sufficient authority showing that the discovery rule does not apply in copyright cases.[12] As such, the Court **DENIES** Defendants' Motion

---

[11]Defendants state incorrectly that *Daboub* stands for the proposition that "the public release of an infringing work constitutes constructive notice to the plaintiff of the existence of a cause of action to trigger the running of the statute of limitations." Defs.' Reply 10 (citing *Daboub*, 42 F.3d at 291). *Daboub* says nothing about "public release" of a work but rather *registration* of the work with the Copyright Office.

Papa incorrectly states that *Daboub* stands for the proposition "most U.S. Circuit Courts of Appeal agree that the discovery rule should apply in copyright matters." Pls.' Resp. 23 (citing *Daboub*, 42 F.3d at 291). The court in *Daboub* made no statement as to whether the discovery rule applied to copyright claims and what other courts of appeal had stated, noting that even if it did apply, Section 205(c) barred the plaintiffs' claims given that the defendant had registered its infringing work and some of the plaintiffs knew about the infringing work several years before the suit was filed. 42 F.3d at 291.

[12]The Court expresses no opinion as to when precisely Papa's claims accrued but notes *Daboub's* disapproval of the continuing tort theory in copyright cases. The *Daboub* case involved claims of copyright infringement by plaintiffs who claimed that the band ZZ Top copied their song and registered the infringing song with the Copyright Office. The *Daboub* court held that "each time ZZ Top sells a single" of the infringing

26

to Dismiss to the extent it seeks dismissal of any claims accruing prior to July 17, 2009 based on limitations.

## IV.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. The Motion is **GRANTED** to the extent it seeks dismissal of all claims against Seitz and Johnston for lack of personal jurisdiction and improper service. As such, the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Seitz and Johnston. The Motion is also **GRANTED** to the extent it seeks dismissal of the Complaint's contributory infringement claim. The Complaint's contributory infringement claim is **DISMISSED WITHOUT PREJUDICE**. The Motion is **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks dismissal of the Complaint's state law claims based on preemption. The state law claims are **DISMISSED** to the extent they seek recovery based on Defendants' use, reproduction, or distribution of the Protected Works. Defendants' other requests for relief are **DENIED**.

The Court does not take lightly dismissal of a claim without reaching its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.,*

---

song, the plaintiffs' "damages may increase, but the tort was committed when ZZ Top copyrighted the song." 42 F.3d at 291. The court discussed the problem of applying a continuing tort theory to copyright, explaining:

> If the continuing tort theory were applied to cases involving musical recordings, then the statute of limitations would never apply to these cases. If the song were played once on a radio, or someone bought a copy of a recording at the store the day before trial, the case would be brought within the statute of limitations and the tort resurrected.

*Id.*

199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (citation omitted)).

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should Plaintiffs replead, Defendants are hereby granted leave to file responses to Plaintiffs' synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

SIGNED: May 15, 2013

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

28