**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

| | | |
|---|---|---|
| PAPA BERG INC., a Texas corporation, and James D. Papa d/b/a PAPA HAYES MUSIC d/b/a PAPA BERG PUBLISHING d/b/a GRAND THEFT PRDUCTIONS d/b/a GRAND THEFT RECORDS d/b/a  NABE NABE MUSIC, d/b/a RED HOT MUSIC, | § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:12-CV-2406-B |
| v. | § § | |
| WORLD WRESTLING ENTERTAINMENT, INC., a Delaware corporation, STEPHANIE MUSIC PUBLISHING, a d/b/a of WORLD WRESTLING ENTERTAINMENT, INC., MICHAEL SEITZ, an individual, JAMES ALAN JOHNSTON, an individual, YUKE'S CO. LTD, a Japanese corporation, TAKE-TWO INTERACTIVE SOFTWARE, INC., a Delaware corporation, and VE NEWCO, LLC d/b/a GAIAM VIVENDI ENTERTAINMENT, a Delaware limited liability company, | § § § § § § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Papa Berg, Inc. et al., by and through their attorneys Guajardo & Marks, LLP, state for their First Amended Complaint the following:

### I.  PARTIES

1. Plaintiff Papa Berg, Inc. ("Papa Berg") is a corporation organized under the laws of the State of Texas with its principal place of business at 1628 Canyon Oaks Dr., Irving, Texas 75061.

2. Plaintiff James D. Papa ("Jimmy Papa" or "Papa") is an individual resident of the State of Texas with his domicile in Irving, Dallas County, Texas.

3.    Plaintiff Jimmy Papa has, throughout the years, done business under the d/b/as Papa Hayes Music, Papa Berg Publishing, Grand Theft Productions, Grand Theft Records, Nabe Nabe Music, and Red Hot Music.

4.    Defendant World Wrestling Entertainment, Inc. ("WWE") is a corporation organized under the laws of the State of Connecticut with its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

5.    Defendant Stephanie Music Publishing is a d/b/a of Defendant WWE ("Stephanie Music") with its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

6.    Defendant Michael Seitz ("Seitz") is an individual resident of the State of Georgia with his domicile in Stockbridge, Georgia.

7.    Defendant James Alan Johnston ("Johnston") is an individual resident of the State of Connecticut who, upon information and belief, is domiciled in Riverside, Connecticut.

8.    Defendant Yuke's Co., Ltd. ("Yuke's") is a Japanese corporation with its principal place of business at 4-45-1 Ebisujima, Sakai, Osaka, Japan.

9.    Defendant Take Two Interactive Software, Inc. ("Take Two") is a corporation organized under the laws of the State of Delaware with its principal place of business at 622 Broadway, New York, New York.

10.   VE Newco, LLC ("Gaiam Vivendi Entertainment") is a limited liability company and wholly owned subsidiary of Gaiam, Inc. organized under the laws of the State of Delaware with its principal place of business at 833 West South Boulder Road, Louisville, CO 80027.

## II.  JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

12.    This Court has supplemental jurisdiction over the claims in this Complaint that arise under the common law of the State of Texas pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.    This Court has personal jurisdiction over Defendant WWE because Defendant WWE has purposefully availed itself of the benefits and protections of doing business in the State of Texas and Defendant WWE's contacts with the State of Texas have been continuous, systematic, and substantial. Defendant WWE was aware that the products it creates have made their way into Texas while in the stream of commerce and has knowingly benefitted from Texas' market for its products. Defendant WWE committed an act outside of Texas knowing that it would cause injury within Texas that caused seriously harmful effects intended or likely to follow its conduct. Defendant WWE has purposefully directed its activities at the State of Texas and the injuries complained of by Plaintiffs arise out of or relate to Defendant's activities directed at the State of Texas. Defendant WWE has sold infringing video products within the State of Texas, directed its agent, Defendant Johnston, to create a derivative work of a song created by Plaintiff, a Texas resident, in violation of Plaintiffs' rights, and reregistered Plaintiffs works as its own, directly harming Plaintiff, a resident of Texas. The exercise of jurisdiction over Defendant WWE does not offend traditional notions of fair play and substantial justice.

14.    This Court has personal jurisdiction over Defendant Stephanie Music because Defendant Stephanie Music is coextensive with Defendant WWE and no longer exists as a business entity.

15.    This Court has personal jurisdiction over Defendant Seitz because Defendant's Seitz's

contacts with the State of Texas have been continuous, systematic, and substantial, and because Defendant Seitz has purposefully directed his activities at the State of Texas. Defendant Seitz was aware the products he partially created made its way into Texas while in the stream of commerce and knowingly benefitted from Texas' market for his products, Seitz committed an act outside of Texas knowing it would cause injury within Texas that caused seriously harmful effects intended or likely to follow his conduct, and the injuries complained of by Plaintiffs arise out of or relate to Defendant's activities directed at the State of Texas. Defendant Seitz, with Papa, wrote and recorded the Badstreet USA song in Texas, recorded the Badstreet video in Texas, knowingly benefited from the sale of this song and video within the Texas market, knowingly benefited from the use of the song during his numerous live performances within the State of Texas, entered into a business partnership with Papa and other individuals in Texas, titled Grand Theft Partners II, regarding the album "Slam Jam I", which was sold in the regular stream of commerce within Texas directly benefitting Seitz, and entered into an assignment of rights contracts regarding his interest in Grand Theft Partners II, signed in Texas, that included a Texas choice of laws clause, and wrongfully diverted Badstreet USA's royalties to himself, causing injury to Plaintiffs within Texas. The exercise of jurisdiction over Defendant Seitz does not offend traditional notions of fair play and substantial justice.

16.  This Court has personal jurisdiction over Defendant Johnston because Defendant Johnston's contacts with the State of Texas have been continuous, systematic, and substantial, Defendant Johnston has purposefully directed his activities at the State of Texas, Defendant Johnston was aware the products he created made their way into Texas while in the stream of commerce and knowingly benefitted from Texas' market for his

products, Johnston committed an act outside of Texas knowing it would cause injury within Texas that caused seriously harmful effects intended or likely to follow his conduct, and the injuries complained of by Plaintiffs arise out of or relate to Defendant's activities directed at the State of Texas. Defendant Johnston was aware of Plaintiffs' ownership of Badstreet USA and created a musical work that is a derivative of, substantially similar to, and infringes upon Plaintiffs' copyrighted work for inclusion in the Legends of Wrestlemania video game. This video game was released on a nationwide scale and widely available through regular distribution channels within the State of Texas. Johnston was aware of the nationwide scope of sales and knowingly benefitted from Texas' market for the video game and unlawfully received revenue from residents of the State of Texas stemming from his creation of a musical work that is a derivative of, substantially similar to, and infringes upon Plaintiffs' copyrighted work. The exercise of jurisdiction over Defendant Johnston does not offend traditional notions of fair play and substantial justice.

17. This Court has personal jurisdiction over Defendant Yuke's because Defendant Yuke's' contacts with the State of Texas have been continuous, systematic, and substantial, and Defendant Yuke's has purposefully directed its activities at the State of Texas. Defendant Yuke's is aware that the products it creates regularly makes their way into Texas while in the stream of commerce and has knowingly benefitted from Texas' market for its products. Defendant Yuke's committed an act outside of Texas knowing that it would cause injury within Texas that caused seriously harmful effects intended or likely to follow its conduct, and the injuries complained of by Plaintiffs arise out of or relate to Defendant's activities directed at the State of Texas. Defendant Yuke's did and continues to knowingly benefits from the sale of the Legends of Wrestlemania game, as well as other games, which

continues to cause injury to Plaintiffs within Texas. The exercise of jurisdiction over Defendant Yuke's does not offend traditional notions of fair play and substantial justice.

18. This Court has personal jurisdiction over Defendant Take Two Interactive because Defendant's contacts with the State of Texas have been continuous, systematic, and substantial, and Defendant Take Two Interactive has purposefully directed its activities at the State of Texas. Defendant Take Two is aware that the products it creates regularly make their way into Texas while in the stream of commerce and has knowingly benefitted from Texas' market for its products. Defendant Take Two Interactive committed an act outside of Texas knowing that it would cause injury within Texas that caused seriously harmful effects intended or likely to follow its conduct, and the injuries complained of by Plaintiffs arise out of or relate to Defendant's activities directed at the State of Texas. Defendant Take Two Interactive continues to knowingly benefit from the sale of the Legends of Wrestlemania and WWE All-Stars games, as well as the associated Southern Charisma downloadable content pack, which continues to cause injury to Plaintiffs within Texas. The exercise of jurisdiction over Defendant Take Two Interactive does not offend traditional notions of fair play and substantial justice.

19. This Court has personal jurisdiction over Defendant Gaiam Vivendi Entertainment because Defendant Gaiam Vivendi Entertainment's contacts with the State of Texas have been continuous, systematic, and substantial, and Defendant Gaiam Vivendi Entertainment has purposefully directed its activities at the State of Texas. Defendant Gaiam Vivendi Entertainment is aware that the products it creates regularly make their way into Texas while in the stream of commerce and has knowingly benefitted from Texas' market for its products. Defendant Gaiam Vivendi Entertainment committed an act outside of Texas (and

inside Texas) knowing that it would cause injury within Texas that caused seriously harmful effects intended or likely to follow its conduct, and the injuries complained of by Plaintiffs arise out of or relate to Defendants' activities directed at the State of Texas. Defendant Gaiam Vivendi Entertainment continues to knowingly benefit from the sale of video products that infringe upon Plaintiffs' copyrighted works, which continues to cause injury to Plaintiffs within Texas. The exercise of jurisdiction over Defendant Gaiam Vivendi Entertainment does not offend traditional notions of fair play and substantial justice.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and because this district is one in which the Defendants may be found.

### III.  PLAINTIFFS' BUSINESS

21. Plaintiff Jimmy Papa is a musician, songwriter, and businessman who, through his career, has operated under the names Papa Hayes Music, Grand Theft Productions, Grand Theft Records, Nabe Nabe Music, and Red Hot Music.

22. Additionally, Plaintiff Papa is the sole officer and director of Plaintiff Papa Berg, Inc., a record label formed by Plaintiff Papa.

23. Plaintiff Papa is widely and favorably known throughout the world for his musical contributions to sports entertainment, and, more specifically, professional wrestling.

24. In October 1983, Plaintiff Papa, Defendant Seitz, who is also known within the professional wrestling world as Michael "P.S." Hayes, and Larry Velez, Jr. wrote the song "Badstreet USA," which was used as the entrance music for professional wrestling stars the

---

Fabulous Freebirds and Michael "P.S." Hayes, who was also a member of the Fabulous Freebirds.

25. "Badstreet USA" was also featured in a music video of the same name, which starred both Plaintiff Papa and Defendant Seitz and was filmed in Dallas, Texas. The "Badstreet USA" video was praised and acclaimed throughout the world both within and outside of professional wrestling.

26. In 1985, Plaintiff Papa received awards for the "Badstreet USA" music video from Buddy Music (the Buddy Holly Award) and from the Texas Music Association.

27. "Badstreet USA" become so popular that Plaintiff Papa was forced to register the work with Broadcast Music, Inc. ("BMI"), which collects license fees on behalf of songwriters and music publishers and distributes them to the songwriters and music publishers as royalties.

28. Plaintiff Papa registered "Badstreet USA" with BMI in November 1983.

29. Plaintiff Papa wrote and co-wrote popular songs for other professional wrestling acts, including for Ron Simmons, Sting, Cactus Jack, Jake "The Snake" Roberts, Ravishing Rick Rude, Johnny B. Badd, "The Natural" Dustin Rhodes, Ricky "The Dragon" Steamboat, Barry Windham, and the Steiner Brothers.

30. In 1991, Defendant Seitz, having lost Fabulous Freebird partners Terry Gordy and Buddy Roberts, teamed up with wrestler Jimmy Garvin to form the "new" Fabulous Freebirds and joined Ted Turner's new wrestling organization, World Championship Wrestling ("WCW").

31. Plaintiff Papa and Defendant Seitz soon after entered into a business relationship titled Grand Theft Partners II, which was created for the purpose of signing a contract with

WCW to distribute an album of wrestling songs co-written by Defendant Seitz and Plaintiff Papa.

32. In 1992, Grand Theft Partners II released a compilation of these works on the album Slam Jam I, which was published by Turner Music Publishing, Inc. ("Turner Music Publishing"), the now defunct publishing house of Turner Broadcasting.

33. When a dispute arose with Turner Music Publishing over its failure to fulfill contractual obligations, the members of Grand Theft Partners II, including Defendant Seitz, decided to assign all rights in and to Grand Theft Partners II, as well as its associated musical works, over to Plaintiff Papa, who intended to sue Turner Music Publishing, because they did not want to be involved in a lawsuit against Ted Turner, the owner of the WCW.

34. Plaintiff Papa ultimately sued Turner Music Publishing and the matter was resolved through an out-of-court settlement.

35. Defendant Seitz continued with WCW until early 1996, at which time he accepted employment as an announcer with Defendant WWE under the stage name "Dok Hendrix."

36. Between 1993 and 2000, Plaintiff Papa continued to receive royalty checks from both BMI and Turner Music Publishing.

## IV.  DEFENDANTS' UNLAWFUL ACTIONS

### a.  Unlawful actions of Defendants WWE, Stephanie Music Publishing, Seitz, and Johnston

37. In 2001, several entities expressed an interest in purchasing WCW from Ted Turner, who, at the time, was Vice Chairman of Time Warner and actively involved in that company's merger with AOL.

38. Defendant WWE, the world's largest sports entertainment provider and WCW's largest

competitor in the field of professional wrestling, was one of these entities.

39. After the merger between Time Warner and AOL, WCW programming was cancelled from both TBS and TNT, and Defendant WWE became interested in acquiring the remaining assets of WCW, which included its video library.

40. WCW's video library did not include Plaintiffs' music or the Slam Jam I album.

41. Additionally, pursuant to the terms of the agreement between Grand Theft Partners II and Turner Music Publishing, Turner Music Publishing was prohibited from assigning its rights to a third party without the prior written consent of Grand Theft Partners II.

42. Defendant WWE purchased the video library (and trademarks) of WCW in 2001, and, consequently, the agreement between Grand Theft Partners II and Turner Music Publishing was terminated.

43. All rights to the music of Grand Theft Partners II reverted back to Plaintiff Papa under the previous agreement executed by the members of Grand Theft Partners II.

44. In approximately 2001, and unbeknownst to Plaintiffs, Defendant WWE, through Defendant Stephanie Music, began receiving royalties for the reproduction, distribution, and performance of Plaintiffs' copyrighted works.

45. In 2009, a representative, working on behalf of video game publisher THQ[1], contacted Plaintiff Papa to inquire about licensing "Badstreet USA" for use in its "Legends of Wrestlemania" video game, which was developed by Defendant Yuke's.

46. After initially making Plaintiff Papa an offer to license the song, THQ's representative informed Plaintiff Papa that it appeared that he was not the owner of rights to the song. Though Plaintiff Papa was the legal publisher of the song, BMI's records listed WWE as

---

[1] THQ was a world-renowned video game publisher, which filed for bankruptcy in late 2012. THQ has not been named as a party in this lawsuit because it no longer exists.

the publisher of record and Defendant James Johnston as the writer.

47. Plaintiff Papa contacted BMI to correct the error and soon learned that "Badstreet USA" had been improperly reregistered by Defendants WWE and Stephanie Music Publishing and had been given a new registration number.

48. After several months of correspondence with BMI, Plaintiff Papa was able to correct the BMI entry for "Badstreet USA." Despite this, THQ chose not to use Plaintiff Papa's song.

49. Instead, WWE instructed Defendant Johnston to create a slavish copy and derivative work of "Badstreet USA," which copied the song's chord progression and substituted in newly created lyrics for inclusion in the "Legends of Wrestlemania" video game.

50. Thus, Defendant WWE recognized that it did not have adequate rights to "Badstreet USA" and, consequently, chose to provide THQ and Defendant Yuke's with a derivative work, which was created so as to avoid purchasing a license from Plaintiff Papa.

51. After Plaintiff Papa was unable to license his work to THQ, he performed further investigation of his BMI listings.

52. Plaintiff Papa soon learned that Defendant WWE had listed Defendant Stephanie Music as the publisher and Defendant Johnston as the songwriter for numerous songs written and published by Plaintiffs.

53. By way of example, Plaintiff Papa registered his work "Mr. Bang Bang" with BMI in connection with the Slam Jam I album in 1992 and under registration number 1767007.

54. Plaintiff Papa later discovered that Defendant WWE re-registered this work with BMI under number 8636045 and listed Defendant Johnston as the songwriter and Defendant Stephanie Music Publishing as the publisher.

55. Plaintiff Papa also soon learned that, between 1996 and 2001, Defendant Seitz had listed

himself as the publisher of "Bad Street," despite Plaintiff Papa's ownership of the publishing rights.

56. Upon information and belief, Defendants Seitz and Johnston received royalty payment summaries, which put them on notice that they were wrongfully receiving royalties for songs they did not write or publish.

57. Consequently, through their manipulation of BMI's artist listings, Defendants Seitz and Johnston unlawfully received royalties rightfully due to Plaintiffs.

58. Additionally, Defendant WWE has and continues to unlawfully reproduce, distribute, and perform Plaintiff's Papa's works in live and recorded broadcasts, through video, DVD, and Blu-Ray releases, through its principal website at http://www.wwe.com, and through ringtones.

59. These actions were undertaken without Plaintiffs' license or acquiescence, and Defendants have failed to pay Plaintiffs royalties for their unlawful actions.

   **b. Unlawful actions of Defendant Yuke's**

60. Pursuant to a license agreement executed between THQ and Defendant WWE, THQ was to publish, and Defendant Yuke's was to develop, the "Legends of Wrestlemania" video game ("Legends of Wrestlemania").

61. Under the terms of the Master Developer Agreement executed between THQ and Defendant Yuke's, Yuke's was to receive a Development Fee and a continuing royalty from the sale of Legends of Wrestlemania.

62. Under the terms of the Master Developer Agreement, Defendant Yuke's was to implement Licensed Content provided by Defendant WWE into Legends of Wrestlemania.

63. Defendant Yuke's developed Legends of Wrestlemania for the Xbox 360 video game

console.

64.   Defendant Yuke's also developed Legends of Wrestlemania for the Playstation 3 video game console.

65.   Legends of Wrestlemania was released in March 2009 to coincide with Wrestlemania XXV.

66.   As a component of the development of Legends of Wrestlemania, Defendant Yuke's developed the Legends of Wrestlemania core video game engine (also used for the Yuke's-developed Smackdown vs. Raw 2009 video game), which serves as the software framework for the implementation of sound effects, music, and scripted events within the Legends of Wrestlemania game.

67.   Among the Licensed Content provided by Defendant WWE, Defendant WWE provided Defendant Yuke's with a slavish copy and derivative work of Plaintiffs' "Badstreet USA" ("Slavish Work").

68.   The credits of Legends of Wrestlemania state: "WWE Entrance Themes Composed by James Johnston, Courtesy of WWE Music Group…."

69.   Upon information and belief, Defendant Johnston created this Slavish Work.

70.   Defendant Yuke's reproduced, prepared derivative works, distributed copies, and performed this Slavish Work publicly by and through its development, release, and sale of Legends of Wrestlemania.

71.   Upon information and belief, Defendant Yuke's reproduced, prepared derivative works, distributed copies, and performed this Slavish Work publicly with prior knowledge that it was not authorized to use Plaintiffs' "Badstreet USA."

72.   Defendant Yuke's received and continues to receive a portion of net sales attributable to

the sale of Legends of Wrestlemania.

73. These actions were undertaken without Plaintiffs' license or acquiescence, and Defendant Yuke's has failed to pay Plaintiffs royalties for their unlawful actions.

   **c.   Unlawful actions of Defendant Take Two Interactive**

74. THQ, through its agreement with Defendant WWE, also published the "WWE All-Stars" video game ("WWE All-Stars").

75. WWE All-Stars was published on the Xbox 360, PlayStation 3, PlayStation 2, Nintendo 3DS, PlayStation Potable, and Nintendo Wii video game consoles in March 2011.

76. The PlayStation 3 and Xbox 360 versions of WWE All-Stars were developed by THQ San Diego.

77. Upon information and belief, THQ San Diego, in house developer for THQ, also developed the "Southern Charisma" downloadable content pack ("Southern Charisma"), which is additional downloadable content that can be purchased through the PlayStation Network or Xbox Live content stores and added to the existing content of WWE All-Stars.

78. Upon information and belief, THQ published Southern Charisma.

79. Southern Charisma allows owners of the WWE All-Stars game to download Defendant Seitz's character, Michael Hayes, and add him to the WWE All-Stars game.

80. When a player selects Defendant Seitz's character in WWE All-Stars, Plaintiffs' "Badstreet USA" is played as the character's entrance music.

81. Both THQ and THQ San Diego, with prior knowledge that they did not have a license to use Plaintiffs' music in their games, reproduced, prepared derivative works of, distributed copies of, and performed publicly Plaintiffs' "Badstreet USA" work.

82. The PlayStation Portable, Nintendo Wii, Nintendo 3DS, and PlayStation 2 versions of

WWE All-Stars were developed by Subdued Software.

83. Upon information and belief, the PlayStation Portable, Nintendo Wii, Nintendo 3DS, and PlayStation 2 versions of WWE All-Stars also feature Defendant Seitz as a downloadable or unlockable character and feature, without license, Plaintiffs' "Badstreet USA" work.

84. Consequently, both THQ and Subdued Software, with prior knowledge that they did not have a license to use Plaintiffs' music in their games, reproduced, prepared derivative works of, distributed copies of, and performed publicly Plaintiffs' "Badstreet USA" work.

85. On December 19, 2012, THQ filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware.

86. THQ San Diego also filed for Chapter 11 bankruptcy at this time.

87. As a result of the THQ bankruptcy, Subdued Software, which relied upon THQ for its video game development revenues, ceased operations.

88. On February 12, 2013, THQ filed a motion requesting an order authorizing THQ to enter into various agreements with Defendants Take Two Interactive, WWE, and Yuke's.

89. Specifically, under the terms of the agreement, Defendant WWE was to terminate its license agreement with THQ, Defendant Yuke's was to terminate its development agreement with THQ, Defendant WWE was to enter into a new license agreement with Defendant Take Two Interactive, Defendant Yuke's was to enter into a new development agreement with Defendant Take Two Interactive, and Defendant Take Two Interactive was to purchase several of THQ's assets.

90. Additionally, THQ was to pay WWE $650,000 for the sale of THQ-published games during the pendency of THQ's bankruptcy.

91. Exhibit D of debtor's Motion contained the Asset Purchase Agreement between Take Two

Interactive and THQ.

92. Under Article II of this Asset Purchase Agreement, Take Two Interactive was to purchase several assets of THQ and assume the liabilities of THQ associated with those assets.

93. Upon information and belief, the parties have executed this Asset Purchase Agreement.

94. Upon information and belief, Defendant Take Two Interactive has purchased the assets and liabilities associated with the Legends of Wrestlemania and WWE All-Stars video games.

95. Upon information and belief, Defendant Take Two Interactive now receives all revenue from the sale of the Legends and Wrestlemania and WWE All-Stars video games, as well as all revenue from the sale of the Southern Charisma downloadable content pack.

96. Upon information and belief, Defendant Take Two Interactive, as the successor in interest to THQ's assets and liabilities, continues to publish the Southern Charisma downloadable content pack, which infringes upon Plaintiffs' rights.

97. These actions continue to be undertaken without Plaintiffs' license or acquiescence, and Defendant Take Two Interactive has failed to pay Plaintiffs royalties for their unlawful actions.

### d. Unlawful actions of Defendant Gaiam Vivendi Entertainment

98. Defendant Gaiam Vivendi Entertainment is the exclusive distributor of Defendant WWE's home video products.

99. As the creator of these home video products, Defendant WWE has reproduced, prepared derivative works of, and distributed copies of Plaintiffs' musical works within these home video products.

100. By way of non-exclusive example, Defendant WWE has used Plaintiffs' "Badstreet USA" in its "Allied Powers" 3 disc DVD set and its "The Triumph and Tragedy of World Class

Championship Wrestling" 2 disc DVD set.

101. Upon information and belief, Defendant Gaiam Vivendi Entertainment, as the exclusive distributor of Defendant WWE's home video products, has reproduced and distributed copies of Plaintiff's musical works to retailers across the United States.

102. Upon information and belief, Defendant Gaiam Vivendi Entertainment has received and continues to receive revenue from the sale of home video products containing Plaintiffs' works.

103. These actions continue to be undertaken without Plaintiffs' license or acquiescence, and Defendant Gaiam Vivendi Entertainment has failed to pay Plaintiffs royalties for its unlawful actions.

### V. PLAINTIFFS' COPYRIGHTED WORKS

104. After discovering Defendants' unlawful actions, Plaintiffs immediately filed for copyright registration of its creative works with the United States Copyright Office[2].

105. Plaintiffs filed for and received registration of "Badstreet USA" with the United States Copyright Office on January 6, 2011 and under registration number PA0001723425. See **Exhibit A**, Copyright Registrations.

106. Plaintiffs filed for and received registration of "Badstreet USA" with the United States Copyright Office on January 7, 2011 and under registration number SR0000670181. See **Exhibit A**, Copyright Registrations.

107. Plaintiffs filed for and received registration of "Badstreet USA Video" with the United States Copyright Office on January 7, 2011 and under registration number Pau003570182. See **Exhibit A**, Copyright Registrations.

---

[2] Plaintiff has ordered, and will provide upon receipt, certified copyright registrations from the United States Copyright Office.

108. Plaintiffs filed for and received registration of "Don't Step to Ron" with the United States Copyright Office on January 6, 2011 and under registration number PA0001741650. See **Exhibit A**, Copyright Registrations.

109. Plaintiffs filed for and received registration of "Freebird Forever" with the United States Copyright Office on January 6, 2011 and under registration number PA0001722566. See **Exhibit A**, Copyright Registrations.

110. Plaintiffs filed for and received registration of "He's Smokin'" with the United States Copyright Office on January 6, 2011 and under registration number PA0001722571. See **Exhibit A**, Copyright Registrations.

111. Plaintiffs filed for and received registration of "Johnny B. Badd" with the United States Copyright Office on January 6, 2011 and under registration number PA0001741786. See **Exhibit A**, Copyright Registrations.

112. Plaintiffs filed for and received registration of "Man Called Sting" with the United States Copyright Office on January 6, 2011 and under registration number PA0001741784. See **Exhibit A**, Copyright Registrations.

113. Plaintiffs filed for and received registration of "Master of the DDT" with the United States Copyright Office on January 6, 2011 and under registration number PA0001741775. See **Exhibit A**, Copyright Registrations.

114. Plaintiffs filed for and received registration of "Mr. Bang Bang" with the United States Copyright Office on January 6, 2011 and under registration number PA0001741777. See **Exhibit A**, Copyright Registrations.

115. Plaintiffs filed for and received registration of "Simply Ravishing" with the United States Copyright Office on January 6, 2011 and under registration number PA0001722569. See

**Exhibit A**, Copyright Registrations.

116. Plaintiffs filed for and received registration of "Slam Jam I" with the United States Copyright Office on January 7, 2011 and under registration number SR0000669970. See **Exhibit A**, Copyright Registrations.

117. Plaintiffs filed for and received registration of "Steinerized" with the United States Copyright Office on January 6, 2011 and under registration number PA0001722562. See **Exhibit A**, Copyright Registrations.

## COUNT I – DIRECT COPYRIGHT INFRINGEMENT

### a) General allegations

118. Plaintiffs reallege paragraphs 1-117 as if fully restated herein.

119. Plaintiffs are the owners of copyright registrations for their creative works of authorship, which are registered with the United States Copyright Office, including, but not limited to, "Badstreet USA" (collectively "Copyrighted Works"). See **Exhibit A**, Copyright Registrations.

120. Due to the wide distribution and popular nature of Plaintiffs' Copyrighted Works, Defendants had access to Plaintiffs' Copyrighted Works.

### b) Direct copyright infringement of Defendant WWE/Stephanie Music Publishing

121. Defendant WWE has copied Plaintiffs' Copyrighted Works.

122. From 2001 to the present, Defendant WWE has reproduced, distributed copies of, and performed and displayed publicly video products, including, but not limited to, in digital versatile disc ("DVD") format and downloadable and streaming formats through the Apple iTunes Store, Netflix, and Defendant WWE's own website, containing Plaintiffs' Copyrighted Works, including, but not limited to, the video products titled "Allied

Powers," "The Triumph and Tragedy of World Class Championship Wrestling," "WWE 25th Anniversary," "Mick Foley Greatest Hits and Misses," and "Wrestlemania 2001."

123. From 2001 to the present, Defendant WWE has reproduced, distributed copies of, and publicly performed and displayed Plaintiffs' Copyrighted Works through Defendants' Classics on Demand video service, which is accessible through cable providers, smart phones, and the http://www.wwe.com website.

124. From 2001 to the present, Defendant WWE has reproduced, distributed copies of, and publicly performed and displayed Plaintiffs' Copyrighted Works in on demand pay per view television events.

125. From 2001 to the present, Defendant WWE has reproduced, distributed copies of, and publicly performed and displayed Plaintiffs' Copyrighted Works in live cable television broadcasts and live untelevised events.

126. Defendant WWE's actions constitute copyright infringement pursuant to 17 U.S.C. § 501.

127. Defendant WWE's actions of infringement were willful, intentional, and purposeful.

128. As a result of Defendant WWE's infringement, Plaintiffs are entitled to statutory damages or actual damages and Defendant WWE's profits pursuant to 17 U.S.C. § 504, whichever is greater.

129. As a result of Defendant WWE's infringement, Plaintiffs are entitled to their costs and attorneys' fees pursuant to 17 U.S.C. § 505.

      **c) Direct copyright infringement of Defendant Johnston**

130. Defendant Johnston has created a slavish copy and derivative work of Plaintiffs' Copyrighted Work "Badstreet USA."

131. Defendant Johnston, with prior knowledge of and access to Plaintiffs' Copyrighted Work,

reproduced, distributed copies of, and publicly performed a work substantially similar to Plaintiffs' Copyrighted Work in the THQ-published video game Legends of Wrestlemania.

132. Defendant Johnston's derivative work utilizes the same chord progression as Plaintiffs' Copyrighted Work "Badstreet USA" and is substantially similar to that work.

133. Defendant Johnston's actions constitute copyright infringement pursuant to 17 U.S.C. § 501.

134. Defendant Johnston's actions of infringement were willful, intentional, and purposeful.

135. As a result of Defendant Johnston's infringement, Plaintiffs are entitled to statutory damages or actual damages and Defendant Johnston's profits pursuant to 17 U.S.C. § 504, whichever is greater.

136. As a result of Defendant Johnston's infringement, Plaintiffs are entitled to their costs and attorneys' fees pursuant to 17 U.S.C. § 505.

   **d) Direct copyright infringement of Defendant Yuke's**

137. Defendant Yuke's has created a slavish copy and derivative work of Plaintiffs' Copyrighted Work "Badstreet USA."

138. Defendant Yuke's, with prior knowledge of and access to Plaintiffs' Copyrighted Work, reproduced, distributed copies of, and publicly performed a work substantially similar to Plaintiffs' Copyrighted Work in the Yuke's-developed video game Legends of Wrestlemania.

139. Defendant Yuke's' derivative work utilizes the same chord progression as Plaintiffs' Copyrighted Work "Badstreet USA" and is substantially similar to that work.

140. Defendant Yuke's' actions constitute copyright infringement pursuant to 17 U.S.C. § 501.

141. Defendant Yuke's' actions of infringement were willful, intentional, and purposeful.

142. As a result of Defendant Yuke's' infringement, Plaintiffs are entitled to statutory damages or actual damages and Defendant Yuke's' profits pursuant to 17 U.S.C. § 504, whichever is greater.

143. As a result of Defendant Yuke's' infringement, Plaintiffs are entitled to their costs and attorneys' fees pursuant to 17 U.S.C. § 505.

**e) Direct copyright infringement of Defendant Take Two Interactive**

144. Defendant Take Two Interactive has copied Plaintiffs' Copyrighted Works.

145. Between approximately March 2011 and February 2012, Defendant Take Two Interactive's predecessor in interest, THQ, reproduced, distributed copies of, and performed publicly the video game product WWE All-Stars.

146. On August 2, 2011, Defendant Take Two Interactive's predecessor in interest, THQ, released the "Southern Charisma Pack," which allowed owners of the WWE All-Stars video game to purchase and download additional playable wrestlers, including Defendant Seitz's character Michael Hayes. The Southern Charisma Pack also contained Plaintiffs' Copyrighted Work "Badstreet USA."

147. Upon information and belief, the PlayStation Portable, Nintendo Wii, Nintendo 3DS, and PlayStation 2 version of WWE All-Stars contained the Southern Charisma Pack pre-loaded on their respective mediums.

148. Consequently, between August 2, 2011 and approximately February 19, 2012, Defendant Take Two Interactive's predecessor in interest, THQ, reproduced, distributed copies of, and performed publicly Plaintiffs' Copyrighted Work through the sale of WWE All-Stars and its downloadable content the Southern Charisma Pack.

149. Upon information and belief, Defendant Take Two Interactive purchased the assets and

liabilities associated with the WWE All-Stars video game, including the Southern Charisma Pack, in THQ's bankruptcy.

150. Upon information and belief, Defendant Take Two Interactive continues to reproduce, distribute copies of, and perform publicly the WWE All-Stars video game and its associated Southern Charisma Pack through retail stores and the Xbox Live and PlayStation Network services.

151. Upon information and belief, Defendant Take Two Interactive, as the predecessor in interest to THQ, continues to realize revenue from the sale of the WWE All-Stars video game and its associated Southern Charisma Pack.

152. Defendant Take Two Interactive's actions constitute copyright infringement pursuant to 17 U.S.C. § 501.

153. Defendant Take Two Interactive's actions of infringement were willful, intentional, and purposeful.

154. As a result of Defendant Take Two Interactive's infringement, Plaintiffs are entitled to statutory damages or actual damages and Defendant Take Two Interactive's profits pursuant to 17 U.S.C. § 504, whichever is greater.

155. As a result of Defendant Take Two Interactive's infringement, Plaintiffs are entitled to their costs and attorneys' fees pursuant to 17 U.S.C. § 505.

**f) Direct copyright infringement of Defendant Gaiam Vivendi Entertainment**

156. Defendant Gaiam Vivendi Entertainment has copied Plaintiffs' Copyrighted Works.

157. Upon information and belief, from 2001 to the present, Gaiam Vivendi Entertainment has reproduced and distributed copies of video products created by Defendant WWE on digital versatile disc ("DVD") and Blu-Ray format, including, but not limited to, the video

products titled "Allied Powers," "The Triumph and Tragedy of World Class Championship Wrestling," "WWE 25th Anniversary," "Mick Foley Greatest Hits and Misses," and "Wrestlemania 2001."

158. Defendant Gaiam Vivendi Entertainment has reproduced and distributed copies of these video products to retailers and consumers across the United States and world.

159. Defendant Gaiam Vivendi Entertainment's actions constitute copyright infringement pursuant to 17 U.S.C. § 501.

160. Defendant Gaiam Vivendi Entertainment's actions of infringement were willful, intentional, and purposeful.

161. As a result of Defendant Gaiam Vivendi Entertainment's infringement, Plaintiffs are entitled to statutory damages or actual damages and Defendant Gaiam Vivendi Entertainment's profits pursuant to 17 U.S.C. § 504, whichever is greater.

162. As a result of Defendant Gaiam Vivendi Entertainment's infringement, Plaintiffs are entitled to their costs and attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II – VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT

163. Plaintiffs reallege paragraphs 1-162 as if fully restated herein.

### a) Vicarious liability against Defendant WWE/Stephanie Music Publishing

164. THQ, as the publisher of the WWE-licensed video game Legends of Wrestlemania, which contains an unauthorized derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

165. THQ, as the publisher of the WWE-licensed video game WWE All-Stars, which contains an unauthorized copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

166. Defendant Yuke's, as the developer of the WWE-licensed video game Legends of Wrestlemania, is liable for copyright infringement.

167. THQ San Diego, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

168. Subdued Software, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

169. Defendant Johnston, as the creator of a derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA" is liable for copyright infringement.

170. Numerous ringtone service providers, including, but not limited to, My Toy Phone and Ideem, which have sold infringing copies of Plaintiffs' Copyrighted Works, are liable for copyright infringement.

171. Defendant Gaiam Vivendi Entertainment, as the distributor of Defendant WWE's infringing video works, is liable for copyright infringement.

172. Pursuant to the World Wrestling Entertainment Terms of License, executed between THQ and Defendant WWE, Defendant WWE possessed the right and ability to supervise the infringing conduct of THQ.

173. Through its provision of licensed content to Defendant Yuke's, Defendant WWE possessed the right and ability to supervise the infringing conduct of Defendant Yuke's.

174. Through its provision of licensed content to THQ San Diego, Defendant WWE possessed the right and ability to supervise the infringing conduct of THQ San Diego.

175. Through its provision of licensed content to Subdued Software, Defendant WWE possessed the right and ability to supervise the infringing conduct of Subdued Software.

176. As his employer, Defendant WWE possessed the right and ability to supervise the

infringing conduct of Defendant Johnston.

177. Through its provision of licensed content to ringtone providers, including, but not limited to, My Toy Phone and Ideem, Defendant WWE possessed the right and ability to supervise the infringing conduct of ringtone providers.

178. Through its provision of video content and products to Defendant Gaiam Vivendi Entertainment, Defendant WWE possessed the right and ability to supervise the infringing conduct of Defendant Gaiam Vivendi Entertainment.

179. Through its collection of royalties and other income from the sale of the Legends of Wrestlemania video game, Defendant WWE has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

180. Through its collection of royalties and other income from the sale of the WWE All-Stars video game, Defendant WWE has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

181. Through its collection of royalties and other income from the sale of ringtones containing Plaintiffs' Copyrighted Works, Defendant WWE has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

182. Through its collection of royalties and other income from video product sales, Defendant WWE has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

183. Defendant WWE has actually received financial reward from the exploitation of Plaintiffs' Copyrighted Works.

184. Consequently, Defendant WWE may be held vicariously liable for copyright infringement.

   **b) Vicarious liability against Defendant Johnston**

185. Defendant WWE, as the creator and publisher of live broadcasts, pay per view video content, streaming video content, downloadable video content, DVDs, and Blu-Rays unlawfully containing Plaintiffs' Copyrighted Works, is liable for copyright infringement.

186. THQ, as the publisher of the WWE-licensed video game Legends of Wrestlemania, which contains an unauthorized derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

187. THQ, as the publisher of the WWE-licensed video game WWE All-Stars, which contains an unauthorized copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

188. Defendant Yuke's, as the developer of the WWE-licensed video game Legends of Wrestlemania, is liable for copyright infringement.

189. THQ San Diego, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

190. Subdued Software, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

191. Through his ability to control the BMI listings associated with his name, Defendant Johnston possessed the right and ability to supervise the infringing conduct of Defendant WWE and control the direction of royalties paid for the use of Plaintiffs' Copyrighted Works, which were unlawfully attributed within BMI's system to Defendant Johnston.

192. Through his ability to control the BMI listings associated with his name, Defendant Johnston possessed the right and ability to supervise the infringing conduct of THQ and control the direction of royalties paid for the use of Plaintiffs' Copyrighted Works, which were unlawfully attributed within BMI's system to Defendant Johnston.

193. Through his ability to control the BMI listings associated with his name, Defendant Johnston possessed the right and ability to supervise the infringing conduct of Defendant Yuke's and control the direction of royalties paid for the use of Plaintiffs' Copyrighted Works, which were unlawfully attributed within BMI's system to Defendant Johnston.

194. Through his ability to control the BMI listings associated with his name, Defendant Johnston possessed the right and ability to supervise the infringing conduct of THQ San Diego and control the direction of royalties paid for the use of Plaintiffs' Copyrighted Works, which were unlawfully attributed within BMI's system to Defendant Johnston.

195. Through his ability to control the BMI listings associated with his name, Defendant Johnston possessed the right and ability to supervise the infringing conduct of Subdued Software and control the direction of royalties paid for the use of Plaintiffs' Copyrighted Works, which were unlawfully attributed within BMI's system to Defendant Johnston.

196. Through his collection of royalties or other income from the use of Plaintiffs' Copyrighted Works in the Legends of Wrestlemania video game, Defendant Johnston has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

197. Through his collection of royalties or other income from the use of Plaintiffs' Copyrighted Works in the WWE All-Stars video game, Defendant Johnston has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

198. Through his collection of royalties or other income from the use of Plaintiffs' Copyrighted Works in live broadcasts, pay per view video content, streaming video content, downloadable video content, DVDs, and Blu-Rays, Defendant Johnston has an obvious and direct financial interest in the exploitation of Plaintiffs' Copyrighted Works.

199. Defendant Johnston has actually received financial reward from the exploitation of

Plaintiffs' Copyrighted Works.

200. Consequently, Defendant Johnston may be held vicariously liable for copyright infringement.

### COUNT III – CONTRIBUTORY COPYRIGHT INFRINGEMENT

201. Plaintiffs reallege paragraphs 1-200 as if fully restated herein.

**a) Contributory copyright infringement of Defendant WWE/Stephanie Music Publishing**

202. THQ, as the publisher of the WWE-licensed video game Legends of Wrestlemania, which contains an unauthorized derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

203. THQ, as the publisher of the WWE-licensed video game WWE All-Stars, which contains an unauthorized copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

204. Defendant Yuke's, as the developer of the WWE-licensed video game Legends of Wrestlemania, is liable for copyright infringement.

205. THQ San Diego, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

206. Subdued Software, as the developer of the WWE-licensed video game WWE All-Stars, is liable for copyright infringement.

207. Defendant Johnston, as the creator of a derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA" is liable for copyright infringement.

208. Numerous ringtone service providers, including, but not limited to, My Toy Phone and Ideem, which have sold infringing copies of Plaintiffs' Copyrighted Works, are liable for

copyright infringement.

209. Defendant Gaiam Vivendi Entertainment, as the distributor of Defendant WWE's infringing video works, is liable for copyright infringement.

210. Defendant WWE, with knowledge of THQ and Defendant Yuke's' infringing activities, induced, caused, and materially contributed to their infringing conduct by providing them with a derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA" for incorporation into the Legends of Wrestling video game with knowledge that the song was infringing and with approval to proceed with the use of the song in the game.

211. Defendant WWE, with knowledge of THQ, THQ San Diego, and Subdued Software's infringing activities, induced, caused, and materially contributed to their infringing conduct by providing them with an unauthorized and unlawful copy of Plaintiffs' Copyrighted Work "Badstreet USA" for incorporation into the WWE All-Stars video game.

212. Defendant WWE, with knowledge of Defendant Johnston's infringing activity, induced, caused, and materially contributed to his infringing conduct by providing him with payment, material support, and a recording studio to create a derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA" for incorporation into the Legends of Wrestling video game.

213. Defendant WWE, with knowledge of the infringing activity of numerous ringtone service providers, such as My Toy Phone and Ideem, induced, caused, and materially contributed to their infringing conduct by providing them with purportedly licensed conduct in violation of Plaintiffs exclusive rights in and to their Copyrighted Works.

214. Defendant WWE, with knowledge of the infringing activity of Gaiam Vivendi Entertainment, induced, caused, and materially contributed to Gaiam Vivendi

Entertainment's infringing conduct by providing it with content for distribution in violation of Plaintiffs' exclusive rights in and to their Copyrighted Works.

215. Defendant WWE has actually received financial reward from the exploitation of Plaintiffs' Copyrighted Works.

216. Consequently, Defendant WWE and Stephanie Music Publishing may be held liable for contributory copyright infringement.

**b) Contributory Copyright Infringement of Defendant Yuke's**

217. THQ, as the publisher of the WWE-licensed video game Legends of Wrestlemania, which contains an unauthorized derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA," is liable for copyright infringement.

218. Defendant Yuke's, with knowledge of THQ's infringing activities, induced, caused, and materially contributed to its infringing conduct by providing it with the video game engine and technology needed to reproduce, distribute, and publicly perform a derivative and slavish copy of Plaintiffs' Copyrighted Work "Badstreet USA" within the Legends of Wrestling video game.

219. Defendant Yuke's has actually received financial reward from the exploitation of Plaintiffs' Copyrighted Works.

220. Consequently, Defendant Yuke's may be held liable for contributory copyright infringement.

## COUNT IV – RESTITUTION FOR UNJUST ENRICHMENT

221. Plaintiffs reallege paragraphs 1-221 as if fully restated herein.

**a) Restitution for unjust enrichment of Defendant WWE/Stephanie Music Publishing**

222. Defendant WWE, through its music-publishing moniker Stephanie Music Publishing, has unjustly and unlawfully obtained revenues from third parties' use of Plaintiffs' Copyrighted Works.

223. From approximately 2001 to the present, Defendant WWE, through its music-publishing moniker Stephanie Music Publishing, has wrongfully and unlawfully listed itself within the BMI database as the sole songwriter of Plaintiffs' Copyrighted Works.

224. Defendant WWE has unjustly and unlawfully obtained these revenues by fraud, duress, or the taking of an undue advantage.

225. As a result of its receipt of these revenues, Defendant WWE has been unjustly enriched.

226. Consequently, Plaintiffs request that the Court award Plaintiffs restitution for Defendant WWE's unjust enrichment and impose a constructive trust on any amounts received by Defendant WWE's unjust enrichment to the benefit of Plaintiffs.

### b) Restitution for unjust enrichment of Defendant Seitz

227. Between approximately 1996 and 2001, Defendant Seitz was wrongfully and unlawfully listed within the BMI database as the publisher of Plaintiffs' Copyrighted Works.

228. As a result of this inaccurate listing, Defendant Seitz unjustly and unlawfully obtained revenues from third parties' use of Plaintiffs' Copyrighted Works.

229. Defendant Seitz has unjustly and unlawfully obtained these revenues by fraud, duress, or the taking of an undue advantage.

230. As a result of his receipt of these revenues, Defendant Seitz has been unjustly enriched.

231. Consequently, Plaintiffs request that the Court award Plaintiffs restitution for Defendant Seitz's unjust enrichment and impose a constructive trust on any amounts received by Defendant Seitz's unjust enrichment to the benefit of Plaintiffs.

### c)  Restitution for unjust enrichment of Defendant Johnston

232. From approximately 2001 to the present, Defendant Johnston has wrongfully and unlawfully listed himself within the BMI database as the sole songwriter of Plaintiffs' Copyrighted Works.

233. As a result of these inaccurate listings, Defendant Johnston unjustly and unlawfully obtained revenues from third parties' use of Plaintiffs' Copyrighted Works.

234. Defendant Johnston has unjustly and unlawfully obtained these revenues by fraud, duress, or the taking of an undue advantage.

235. As a result of his receipt of these revenues, Defendant Johnston has been unjustly enriched.

236. Consequently, Plaintiffs request that the Court award Plaintiffs restitution for Defendant Johnston's unjust enrichment and impose a constructive trust on any amounts received by Defendant Johnston's unjust enrichment to the benefit of Plaintiffs.

### d)  Restitution for unjust enrichment of Defendant Take Two Interactive

237. Through its receipt of revenue from the continued sale of THQ-published games Legends of Wrestlemania and WWE All-Stars, Defendant Take Two Interactive has unjustly and unlawfully obtained revenues.

238. Through its receipt of revenue from the continued sale of the Southern Charisma downloadable content pack for the video game WWE All-Stars, Defendant Take Two Interactive has unjustly and unlawfully obtained revenues.

239. Defendant Take Two Interactive has unjustly and unlawfully obtained these revenues by fraud, duress, or the taking of an undue advantage.

240. As a result of its receipt of these revenues, Defendant Take Two Interactive has been unjustly enriched.

241. Consequently, Plaintiffs request that the Court award Plaintiffs restitution for Defendant Take Two Interactive's unjust enrichment and impose a constructive trust on any amounts received by Defendant Take Two Interactive's unjust enrichment to the benefit of Plaintiffs.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully asks that the Court enter the following judgment against Defendants:

1. That the Court rule and declare that Plaintiffs are the owners of the Copyrighted Works;

2. That the Court rule and declare that Defendants WWE, Stephanie Music Publishing, Johnston, Yuke's, Take Two Interactive, and Gaiam Vivendi Entertainment have infringed upon Plaintiffs' copyright rights;

3. That the Court rule and declare that Defendants WWE, Stephanie Music Publishing, and Johnston are vicariously liable for the copyright infringement of third parties;

4. That the Court rule and declare that Defendants WWE, Stephanie Music Publishing, and Yuke's' actions constitute contributory copyright infringement;

5. That the Court rule and declare that Defendants WWE, Stephanie Music Publishing, Seitz, Johnston, and Take Two Interactive were unjustly enriched by their unlawful actions and order the payment of restitution to Plaintiffs;

6. That the Court permanently enjoin and restrain Defendants WWE, Stephanie Music Publishing, Seitz, and Johnston, pursuant to 17 U.S.C. § 502, from further infringing upon Plaintiffs' copyright rights;

7. That the Court permanently enjoin and restrain Defendants WWE, Stephanie Music

Publishing, Seitz, and Johnston, pursuant 17 U.S.C. § 502, from listing themselves as the publishers or songwriters of Plaintiffs' music within the BMI database or the database of any other performing rights organization;

8. That the Court award Plaintiffs its actual damages (or statutory damages, whichever is greater), lost profits, consequential damages, exemplary damages, punitive damages, and any other damages allowable under law;

9. That the Court award Plaintiff prejudgment interest according to law;

10. That the Court award Plaintiff its costs and attorneys' fees; and

11. That the Court award Plaintiff any other relief to which it is entitled or that the Court may deem proper and just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

Respectfully submitted,

**GUAJARDO & MARKS, LLP**

/s/ J. Gregory Marks
**J. GREGORY MARKS**
Texas Bar No. 12994900
**MICHAEL G. GUAJARDO**
Texas Bar No. 00784183
Guajardo & Marks, LLP
One Galleria Tower
13355 Noel Road, Suite 1370
Dallas, Texas  75240
Telephone:  (972) 774-9800
Facsimile:  (972) 774-9801
greg@guajardomarks.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served upon all counsel of record via the Court's ECF system on the 31st day of July, 2013.

/s/ J. Gregory Marks
**J. GREGORY MARKS**