UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PAPA BERG, INC., et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. 3:12-CV-2406-B |
| | § | |
| **WORLD WRESTLING** | § | |
| **ENTERTAINMENT, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs' Motion for Leave to Amend the Complaint (doc. 38) filed July 31, 2013. Plaintiffs Papa Berg, Inc. and James D. Papa ("Jimmy Papa") (together, "Plaintiffs") seek leave to amend the original complaint ("Complaint") by adding new claims and by re-asserting claims previously dismissed without prejudice pursuant to the Court's May 15, 2013 Memorandum Opinion and Order ("May 15 Order") (doc. 19), *Papa Berg, Inc. v. World Wrestling Entertainment, Inc.*, No. 12-cv-2406, 2013 WL 2090547 (N.D. Tex. May 15, 2013). Defendants only oppose Plaintiffs' Motion to the extent it seeks to re-assert the dismissed claims. For the reasons that follow, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion.

## I.

## BACKGROUND

Rather than re-state the relevant facts, previously outlined in the May 15 Order, the Court begins by tracing the procedural history that brought the parties to this point in the case.

A.   *Original Complaint and* May 15 Order

1

On July 17, 2012, Plaintiffs filed their Complaint (doc. 1) against two business entities—World Wrestling Entertainment, Inc. and Stephanie Music Publishing, Inc. (together, "WWE")[1]—and two individuals/WWE employees—Michael Seitz a/k/a/ Michael Hayes ("Seitz") and James Alan Johnston ("Johnston") (together, "Individual Defendants") (collectively, "Defendants"). The Complaint contained sparse factual details supporting the claims—vaguely asserted against all four defendants—including one count of direct copyright infringement, one count of contributory copyright infringement, and four related state law claims. At their first opportunity, Defendants moved to, among other things, dismiss the Complaint on various grounds (doc. 10).

On May 15, 2013, the Court denied in part and granted in part Defendants' Motion (doc. 19). Specifically, the Court dismissed without prejudice (1) all claims against the Individual Defendants for (A) lack of personal jurisdiction and (B) failure to effectuate timely service, and (2) the contributory copyright infringement claim for failure to properly plead the claim's elements. The May 15 Order also partially dismissed without prejudice Plaintiffs' (3) state law claims on federal copyright preemption grounds.

B.      *Events following May 15 Order*

Having dismissed their claims without prejudice, the Court anticipated Plaintiffs may attempt to re-plead. To streamline the process, the Court instructed that any re-pleading "should" be done "no later than thirty (30) days from the date of this Order."[2] May 15 Order at 28, *Papa Berg*, 2013

---

[1] Stephanie Music Publishing, Inc. is named in the Amended Complaint as d/b/a World Wrestling Entertainment, Inc. *Am. Compl.* ¶ 4. Stephanie Music is "*coextensive with Defendant WWE and no longer exists as a business entity.*" Id. ¶ 13.

[2] The May 15 Order also required that Plaintiffs submit a ten-page synopsis explaining why the re-pled claims overcame the deficiencies stated therein. While Plaintiffs' Motion exceeds ten-pages, they did make a good faith effort to comply with this requirement by providing less than ten pages of analysis on the

WL 2090547 at *14.

From there, the case proceeded on the remaining claims against the WWE. On June 6, 2013, the Court issued a Scheduling Order (doc. 28) with the typical case management deadlines for this sort of proceeding. Among the scheduled dates was a "Deadline for Motion for Leave to Join Parties or Amend Pleadings," set for July 31, 2013. The Scheduling Order did not mention the May 15 Order's thirty-day deadline, which was set to expire June 14, 2013. And while a Joint Motion to Clarify Defendants' Deadline to Answer or Otherwise Respond to the Complaint indicated (as of May 29, 2013) that Plaintiffs were considering re-pleading,[3] the thirty-day deadline passed without any submission from Plaintiffs.

Meanwhile, in June 2013, Plaintiffs, apparently at odds with their counsel of record in this case, began to confer with prospective substitution counsel. Doc. 39, Papa's Aff. ¶ 7. Jimmy Papa avers that during his discussions with prospective counsel, he learned for the first time that Plaintiffs' claims had been dismissed pursuant to the May 15 Order. *Id.* ¶¶ 8–9. By that time, the Court's thirty-day deadline to re-plead had expired. *Id.* ¶ 10. Soon thereafter, Plaintiffs signed with their new attorney, *Id.* ¶¶ 13–14, and filed a designation of new lead counsel with the Court on July 29, 2013 (doc. 37). Two days later—July 31, 2013—Plaintiffs filed this pending Motion for Leave to Amend the Complaint (doc. 38).

C.      *Motion for Leave and the Amended Complaint*

The thirty-six page Amended Complaint, which Plaintiffs seek leave to file, differs

---

May 15 Order's defects.

[3] *See* Joint Mot., *Doc.* 21, ¶ 6 (". . . Plaintiffs have not yet determined whether they will amend their Original Complaint . . . .").

significantly from the original sixteen page Complaint. With the proposed amendments, the new complaint can be broken down into three groups of claims for purposes of this Motion. First, the claims against the WWE not dismissed by the May 15 Order, including a direct copyright infringement claim and what is essentially an unjust enrichment claim.[4] Second, new claims and parties not in the Complaint, including a vicarious liability claim against WWE and various claims against three new defendants: Yuke's Co., Ltd., Take Two Interactive Software, Inc., and VE Newco, LLC.[5] Third, claims dismissed by the May 15 Order (the "Re-pled Claims"), including claims against the Individual Defendants and a contributory copyright infringement claim against WWE.

Defendants only contest Plaintiffs' Motion to the extent it seeks leave to file the Re-pled Claims. And since Plaintiffs' Motion was filed before the expiration of the July 31, 2013 deadline to move for leave to amend, the Court **GRANTS** Plaintiffs' Motion to the extent it seeks leave to amend the Complaint by adding new claims and parties, and new allegations supporting the claims not dismissed by the May 15 Order. However, as Defendants' correctly assert, Plaintiffs' Motion was filed (July 31, 2013) after the May 15 Order's thirty-day deadline expired (June 14, 2014), and therefore, the Motion is untimely in so far as it seeks leave to add the Re-pled Claims.[6] In addition

---

[4] The May 15 Order allowed Plaintiffs to pursue their original four state law claims to the extent they sought recovery based on Defendants' re-registration and subsequent diversion of royalties from third parties not related to Defendants' use of the songs Plaintiffs' claim rights to. This is what the Amended Complaint seeks recovery for through its unjust enrichment claim against WWE. *See* Am. Compl. ¶ 221–226. In other words, Plaintiffs essentially took their four partially-dismissed state law claims from the Complaint and incorporated them into a single unjust enrichment claim.

[5] Specifically, the Amended Complaint asserts direct copyright infringement claims against all three new defendants, a contributory copyright infringement claim against Yuke's, and an unjust enrichment claim against Take Two.

[6] Contrary to Plaintiffs' contentions, the May 15 Order's thirty-day deadline governs Plaintiffs' attempt to assert the Re-pled Claims. If the Court were to accept Plaintiffs' position that the Scheduling

4

to timeliness, Defendants dispute whether the Re-pled Claims overcome the deficiencies noted in the May 15 Order. These issues are now ripe for resolution.

## II.

## LEGAL STANDARD

A.    *Plaintiffs May Seek Leave Pursuant to Rules 15(a) and 16(b)*

The parties initially dispute the proper standard for determining whether the Re-pled Claims should be permitted to go forward given the untimeliness of Plaintiffs' request to amend. Plaintiffs maintain that the untimely amendments should be examined under the analytical framework that typically applies when parties move for leave after the scheduling order's deadline to amend has expired. Pl.'s Mot. 4. Under that framework, a court first determines, pursuant to Federal Rule of Civil Procedure 16(b)(4), whether the plaintiffs has shown "good cause" to allow the untimely motion, and then examines the motion under Rule 15(a)(2)'s more lenient standard. *Valcho v. Dallas County Hosp. Dist.*, 658 F. Supp. 2d 802, 814 (N.D. Tex. 2009).

Defendants, on the other hand, argue that the Court may summarily dismiss the untimely amendments. Def.'s Resp. 3. Defendants contend that the Court has broad discretion to deny leave when a specifically-ordered deadline to amend has expired. *Id.* at 3–4. Defendants further posit that the analysis Plaintiffs advocate for only applies when a scheduling order deadline has expired. *Id.* 4. Since the May 15 Order is not a scheduling order, Defendants maintain "there is no basis to apply Rule 16(b)(4) in these circumstances." *Id.* While the law here is not entirely clear, the weight of

---

Order's deadline to amend applies, it would have to find that the Scheduling Order somehow nullified the May 15 Order's thirty-day deadline. But the Court never mentioned the May 15 Order's specific mandate regarding the timing of Plaintiffs' re-pleading while routinely setting the case management schedule.

5

existing precedent favors Plaintiffs' position.

First, though the Fifth Circuit affords lower courts a good deal of discretion to deny leave, there are constraints to the exercise of that discretion. In the case Defendants rely most heavily on—*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994)—the Fifth Circuit found, under the particular facts presented, that the district court did not overstep the boundaries of its discretion in denying leave. While *Norman* was less than clear about those boundaries, other Fifth Circuit cases explicitly hold that, at the very least, a court's discretion to deny leave is limited by Rule 15. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (quoting *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)) ("[A] district court's discretion to deny a litigant leave to amend . . . 'is limited because Rule 15 evinces a bias in favor of granting leave to amend.'"). Accordingly, rather than rely on the similarities between this case and *Norman* to summarily deny Plaintiffs' Motion,[7] the Court must, at the very least, explore the justifications for granting or denying leave under Rule 15. *See id.* ("[A] district court may be reversed for failing to provide an adequate explanation for denying [leave].").

Second, the Court can find no reasonable basis to treat these circumstances differently simply because the May 15 Order was not a scheduling order. For starters, the Court rejects Defendants' suggestion that since—in their view—Rule 16(b)(4) does not apply here, Plaintiffs have no right to file their untimely amendments. On the contrary, Rule 16(b)(4) typically stands as an *obstacle* for

---

[7] Defendants cite *Norman* for the fact that, like in this case, the plaintiffs were afforded "the opportunity to amend 'for a limited period of time and [the plaintiff's] amended complaint was not filed within those limits.'" Def.'s Resp. 3–4 (quoting *Norman*, 19 F.3d at 1022). The Fifth Circuit cited this fact to illustrate the magistrate judge's sound reasoning in initially striking the untimely amendment at issue. See *Norman*, 19 F.3d at 1022. But unlike here, the untimely amendment at issue was filed over five months after the "limited period of time" to amend expired, without any explanation for the delay or an accompanying motion for leave (though one was later filed and denied). *See id.* at 1020–21.

tardy plaintiffs, requiring them to demonstrate "good cause to modify the schedul[e]" before applying "the more liberal standard of Rule 15(a) . . . to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). In any event, the relevant law suggests Rule 16(b)(4) does, in fact, apply in these circumstances. As Plaintiffs point out, Rule 16(b)(4) refers to a court's "schedule," not a scheduling order. Pl.'s Rep. 2; *see* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). And while it appears the Fifth Circuit has typically applied Rule 16(b)(4) to expired scheduling order deadlines, the Circuit's consistent refrain is that district courts should be afforded "broad discretion to preserve the integrity and purpose of the *pretrial order*." *S&W Enters.*, 315 F.3d at 535–36 (emphasis added) (quotation marks and internal citations omitted). That rationale applies equally to the May 15 Order's thirty-day deadline, which is simply a "pretrial order" intended to promote "court efficiency" and "expedite pretrial procedure." *Id.* at 535. Therefore, the Court concludes that its discretion to grant or deny Plaintiffs leave is defined by the standard analytical framework governing untimely motions for leave to amend: Rules 16(b)(4) and 15(a)(2).

B.     *Legal Standards Governing Rules 16(b)(4) and 15(a)(2)*

Having determined the applicable legal rules, the Court now turns to the standards governing these rules. As discussed before, when a plaintiff files an untimely motion for leave to amend the complaint, the Court must first determine whether the plaintiff has shown good cause under Rule 16(b)(4) before evaluating the motion under Rule 15(a)(2)'s more lenient standard.[8] *Valcho*, 658 F.

---

[8] In what amounts to essentially the same analysis, the Fifth Circuit has alternatively applied a Rule 16(b)(4) factors test incorporating relevant aspects of the Rule 15(a)(2) analysis. *See Filgueira v. U.S. Bank Nat. Ass'n*, — F.3d — , 2013 WL 5873357 at *1–3 (5th Cir. 2013) (finding Rule 16(b)(4)'s second factor—importance of the amendment—lacking due to what is usually a Rule 15(a)(2) consideration: the

Supp. 2d at 814.

The Rule 16(b)(4) "good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). In determining whether good cause has been shown, courts consider "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (quoting *S&W Enters.*, 315 F.3d at 536).

Even if Plaintiffs establish "good cause" for their tardiness under Rule 16, the Court may still deny leave if there is a justification for doing so under Rule 15(a)(2). *See Veldekens v. GE HFS Holdings, Inc.*, No. 06-3296, 2008 WL 190442 at *4 (S.D. Tex. Jan. 22, 2008) ("Even if the plaintiffs were not required to satisfy the 'good cause' showing under Rule 16(b), this court would still deny leave to amend . . . under Rule 15(a) because of the undue delay."). Since Rule 15(a)(2) provides that leave to amend should be granted "freely" as "justice so requires," FED. R. CIV. P. 15(a)(2), "[a] motion to amend ordinarily should be granted absent some justification for refusal." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). The only apparent justification for denying leave here—that is, the only justification offered by Defendants—is that Plaintiffs' "amendment[s] would be futile." Id. Specifically, the Court may deny Plaintiffs' Motion to the extent the Re-pled Claims fail to overcome the deficiencies that led to their dismissal. *See Simmons v. Sabine River Auth.*

---

amendment would be futile).

*Louisiana,* 732 F.3d 469, 478 (5th Cir. 2013) ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given.") (quotation marks omitted).

## III.

## ANALYSIS

As discussed above, the Court must first evaluate whether Plaintiffs have shown "good cause" for their untimely amendments under Rule 16(b)(4). Assuming good cause is shown, the Court must next determine whether leave would be "futile" under Rule 15(a)(2) by examining the Re-pled Claims in relation to the defects that led to their dismissal. For the claims against the Individual Defendants, these defects include lack of personal jurisdiction, and failure to effectuate timely service. For the contributory copyright infringement claim against the WWE, the defect at issue is Plaintiffs' failure to state a claim upon which relief may be granted. The Court addresses the issue of good cause, followed by each of these defects, in turn.

A.    *"Good Cause" Under Rule 16(b)(4)*

Plaintiffs' Motion for leave was filed seventy-seven days after the May 15 Order's thirty-day deadline. As discussed before, to determine whether Plaintiffs have shown "good cause" to allow these untimely amendments under Rule 16(b)(4), the Court must consider four factors that center on Plaintiffs' explanation for their tardiness and any potential prejudice granting or denying leave may cause.

Plaintiffs explain that their failure to re-plead in a timely fashion is the result of "the sheer neglect of their previous counsel." Pl.'s Mot. 4. Plaintiff Jimmy Papa avers that by the time he was informed Plaintiffs' claims had been dismissed, "the Court's 30-day deadline to amend the pleadings had expired." Papa's Aff. ¶ 10. Plaintiffs then immediately sought and hired new counsel, who filed

9

this Motion before the Scheduling Order's July 31, 2013 deadline to move for leave to amend the pleadings. *Id.* ¶¶ 13–14.

Defendants respond by pointing to the May 29, 2013 Joint Statement by the parties, which stated that "Plaintiffs have not yet determined whether they will amend their Original Complaint." Joint Statement, Doc. 21, at 2. This, according to Defendants, reflects prior counsel's conscious decision not to re-plead the dismissed claims. Def.'s Resp. 2. Therefore, as Defendants see it, Plaintiffs' Motion should be rejected as an unjustifiable attempt to second-guess prior counsel's reasoned determination. *Id.* at 2. While Defendants present a strong argument, the relevant factors governing the Court's decision militate in Plaintiffs' favor.

As to the first factor, Plaintiffs offer an adequate explanation for their untimely Motion. When Plaintiffs' learned the Re-pled Claims had been dismissed, the thirty-day deadline had already expired. Regardless of what drove prior counsel's inaction, Plaintiffs have shown that they proceeded with reasonable diligence after learning of the dismissal by quickly hiring a new attorney and filing this Motion before the Scheduling Order's deadline to amend, which, to the uninitiated, could reasonably be confused with the May 15 Order's thirty-day deadline. Second, Plaintiffs' amendments are important to their case, because without them, Plaintiff will be unable pursue the Re-pled Claims in this proceeding. Third, Defendants stand to suffer no cognizable prejudice if Plaintiffs are allowed to re-plead given that this Motion would be timely under the Scheduling Order's deadline to amend the pleadings. And given that trial is nearly a year away, the fourth factor has no bearing on this matter. In short, Plaintiffs offered an adequate explanation for their tardiness at an early point in the proceedings where Defendants stand to suffer no prejudice. Accordingly, the Court finds Plaintiffs have established "good cause" under Rule 16(b)(4).

B.     *Futility of Claims Against Individual Defendants Under Rule 15(a)*

Having determined Plaintiffs' established good cause to amend pursuant to Rule 16(b)(4), the Court now must evaluate its discretion to grant or deny leave under Rule 15(a). As discussed earlier, the only apparent justification for denying Plaintiffs leave under Rule 15(a)—that is, the only justification argued for by Defendants—is that the Re-pled Claims are "futile." And as a reminder, the Re-pled Claims are "futile" to the extent they fail to overcome the deficiencies that warranted dismissal, as stated in the May 15 Order.

The first two (of three) deficiencies at issue relate to Plaintiffs' claims against the Individual Defendants, including an unjust enrichment claim against Seitz, and copyright infringement and unjust enrichment claims against Johnston. Defendants argue that Plaintiffs' Motion is futile to the extent it seeks to re-assert these claims, because the Amended Complaint fails to overcome either ground that led the Court to dismiss all claims against the Individual Defendants on May 15, 2013. Specifically, Defendants point to Plaintiffs' failure to establish personal jurisdiction and failure to timely serve the Individual Defendants. The Court addresses each of these deficiencies in turn.

### 1.     Personal Jurisdiction Over Individual Defendants

In addressing this defect, the Court begins by discussing the May 15 Order's relevant personal jurisdiction findings while reviewing the applicable law along the way. The May 15 Order concluded that asserting personal jurisdiction over the non-resident Individual Defendants would violate the Fourteenth Amendment's Due Process Clause.[9] Specifically, the Court found the Individual

---

[9] Generally, personal jurisdiction in Texas over a nonresident defendant carries two preconditions: (1) the nonresident must be amendable to service of process under Texas' long-arm statute; and (2) the assertion of personal jurisdiction must comport with the Due Process Clause of the U.S. Constitution. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). But since personal jurisdiction

Defendants had not engaged in the requisite "minimum contacts" with Texas based on facts drawn from Johnston's affidavit,[10] Seitz's affidavit,[11] and Plaintiffs' Complaint, which failed to allege "any contact whatsoever with Texas on behalf of either Individual Defendant." May 15 Order at 15, *Papa Berg*, 2013 WL 2090547 at *7. These facts, the Court concluded, failed to establish the Individual Defendants' "minimum contacts" under either the general and specific personal jurisdiction analyses.[12]

As for specific jurisdiction, the Court found Plaintiffs failed to make out a *prima facie* case under the first two steps of the Fifth Circuit's three-part test, which requires "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." ITL Intern, Inc. v. Constenia, S.A., 669 F.3d 493, 498 (5th Cir. 2012) (citing

---

under Texas' Long-Arm Statute is granted to the fullest extent allowed by the U.S. Constitution, the Court need only determine whether personal jurisdiction over the Individual Defendants is constitutionally permissible. *See id.* at 1067–68.

[10] Johnston's affidavit demonstrated that he is a resident of Connecticut, the music director of WWE and that "he has no relevant contacts with Texas. . . ." May 15 Order 15, *Papa Berg*, 2013 WL 2090547 at *8.

[11] Seitz's affidavit showed he (1) is a resident of Georgia and Vice President of creative writing/booking for the WWE; (2) commuted to Dallas from Georgia for two-week blocks of time in the late 1980's, during which time he stayed with Papa; and (3) has been to Texas for WWE events sixteen times since 2011, but otherwise has not had any substantive contacts with Texas in over twenty-five years. May 15 Order 15, *Papa Berg*, 2013 WL 2090547 at *8.

[12] The "minimum contacts" test can be met by contacts giving rise to either general or specific jurisdiction. Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). Specific personal jurisdiction exists when the nonresident defendant's contacts with the forum state arise from or are directly related to the cause of action. Gundle, 85 F.3d at 205.

Nuovo Pignone, SpA v. Stroman Asia M/V, 310 F.3d 371, 378 (5th Cir. 2002)). The Court also rejected Plaintiffs' argument that specific jurisdiction was proper under *Calder v. Jones*, which holds that "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).

As for general jurisdiction, the Court concluded that the Individual Defendants had not had the "substantial, continuous, and systematic contacts required for general jurisdiction." May 15 Order at 16, *Papa Berg*, 2013 WL 2090547 at *9 (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)). The Court reasoned that "Johnston has had no contact with Texas in at least ten years, and Seitz's only contact in the last 25 years has been sixteen trips for WWE live events, which do not have any apparent connection with the [Copyrighted Works]."[13] *Id.*

Now, Plaintiffs seek leave to re-assert their dismissed claims against the Individual Defendants, arguing that new allegations in the Amended Complaint support specific jurisdiction over Johnston, and specific and general jurisdiction over Seitz. Defendants counter that the new allegations do not alter the May 15 Order's ruling. To resolve this dispute, the Court analyzes, in turn, its ability to assert personal jurisdiction over each Individual Defendant. *See Rollys-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 772 (N.D. Tex. 2008) (quoting *Action Embroidery Corp. v. Atl.*

---

[13] The May 15 Order (and original complaint) referred to various songs Plaintiffs allegedly hold rights to as the "Protected Works." The Court now adopts the Amended Complaint's new terminology: the Copyrighted Works.

*Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)) ("Personal jurisdiction must exist for each claim asserted against [each] defendant.").

> i.    *Personal Jurisdiction over Johnston*

In their Motion, Plaintiffs ask the Court to assert specific personal jurisdiction over the Amended Complaints' unjust enrichment and copyright infringement claims against Johnston. Plaintiffs argue that newly-presented facts[14] establish specific personal jurisdiction over Johnston for at least two reasons. First, Plaintiffs submit, pursuant to the stream of commerce doctrine, that income Johnston derived from Texas-based sales of a WWE video game ("Legends of Wrestlemania") incorporating Johnston's infringing song establish his minimum contacts in Texas. Pl.'s Mot. 10. Second, Plaintiffs alternatively claim that jurisdiction is proper under the *Calder* effects test, because Johnston's out-of-state activity was calculated to cause harm to Plaintiffs in Texas. *Id.* at 11.

Defendants counter that these new facts only concern WWE's contacts in Texas—the distribution of consumer goods into the stream of commerce—which cannot be imputed onto Johnston for purposes of personal jurisdiction. Def.'s Resp. 8. As for the effects test, the Defendants point the Court to its ruling in the May 15 Order. *Id.* For the reasons that follow, the Court concludes, as it did before, that it lacks personal jurisdiction over Johnston.

First, the stream of commerce cases Plaintiffs rely on are inapposite here. These cases hold

---

[14] *See Am. Compl.* ¶ 16 (stating Johnston's contacts with Texas, including that the infringing song Johnston created for a WWE video game made its way into the stream of commerce, and that Johnston's work on the infringing song was directed at and caused harmful effects in Texas); Papa Aff. ¶¶ 19–21 (averring that Papa purchased the infringing video game in Texas, it was widely available in Texas, and it contains a derivative copy of Badstreet USA); Ex. E of App. Supp. Pl.'s Rep. (listing songs under Johnston's name on iTunes).

14

that minimum contacts may be established by showing "that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). However, a defendant's "contacts with" the forum state "are not to be judged according to their employer's activities there." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Lee v. Allen*, 32 F.3d 566, at * 3 (5th Cir. 1994) (unpublished) ("[J]urisdiction over the employees of a corporation may not be predicated on jurisdiction over the corporation itself, but must be based on their *individual* contacts with the forum state."). Here, the facts do not reasonably suggest that Johnston played a role in the distribution of products his employer (WWE) and third parties delivered into the stream of commerce.[15] That Johnston participated in the creative development of Legends of Wrestlemania, and indirectly benefitted from Texas-based sales, is not enough to impute onto him "'the unilateral activity of another party or third person.'" *Ainsworth*, 716 F.3d at 177 (quoting *ITL Int'l*, 669 F.3d at 498); *see also McFadin v. Gerber*, 587 F.3d 753, 761–63 (5th Cir. 2009) (finding the stream of commerce doctrine inapplicable where a third party sold knock-off handbags in Texas loaned by the defendant, who "received, at most, a two-percent commission" and "did not direct [the third party] to go to Texas"). Therefore, the Court again concludes that while "personal jurisdiction is proper as to WWE under a stream of commerce theory, [Plaintiffs have] not established through a *prima facie* case that [Johnston] put the allegedly infringing works into the stream of commerce." May 15 Order 16, *Papa Berg*, 2013 WL 2090547 at *8.

---

[15] There are no facts or allegations indicating that Johnston had any role in the distribution of products he helped develop. In fact, the Amended Complaint alleges that Legends of Wrestlemania was distributed through third parties that WWE (not Johnston) entered into agreements with. *See* Am. Compl. ¶ 60–61, 69–71.

15

Second, Plaintiffs' renewed effort to establish Johnston's minimum contacts under *Calder* is also unavailing. As noted before, "personal jurisdiction under the effects test is rare, and plaintiffs must still show that a defendant purposefully availed itself of the benefits of the forum state or purposely directed conduct at the forum state." *Id.* (citing *Stroman Realty v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008)). Nonetheless, Plaintiffs again press for personal jurisdiction under the effects test, asserting that Johnston knowingly diverted royalties to himself, thereby harming Plaintiffs in Texas. Pl.'s Mot. 11. Since this is substantively the same argument previously rejected, the Court again concludes that "the effects test alone does not support personal jurisdiction over" Johnston. May 15 Order 17, *Papa Berg*, 2013 WL 2090547 at *8. Moreover, even considering the effects Johnston's conduct had on Plaintiffs in Texas, the Court has no reasonable basis to conclude that Johnston's purely out-of-state activities were "purposely directed" at Texas or that he otherwise "purposely availed [him]self of the privleges of conducting activities there." *McFadin*, 587 F.3d at 759 (quotation marks omitted).

Accordingly, the Court concludes that Plaintiffs have failed to establish a prima facie case of Johnston's minimum contacts with Texas. Granting Plaintiffs leave to re-plead their claims against Johnston would, therefore, be futile. As such, to the extent Plaintiffs seek leave to re-plead claims against Johnston, their Motion is **DENIED**.

*ii.    Personal Jurisdiction over Seitz*

Plaintiffs next advocate for both specific and general personal jurisdiction over their unjust enrichment claim against Seitz. In support, Plaintiffs assert contacts on the part of Seitz that are substantively the same as the specific jurisdictional theories rejected above for Johnston. However, Plaintiffs also submit a more direct set of Texas contacts for Seitz, including his: (1) creative efforts

16

on Badstreet USA in Texas, including co-writing, song recording, and music video recording; (2) business agreements with Jimmy Papa executed in Texas; and (iii) various appearances in Texas for WWE and other wrestling-related events.[16] Defendants argue in response that the new allegations, while more specific, "do not change, much less overcome" the facts in Seitz's affidavit that the Court relied on in dismissing Papa's claims. Def.'s Resp. 7. While the Court agrees that it still lacks general personal jurisdiction over Seitz, it finds that the new facts provided by Plaintiffs establish specific personal jurisdiction over the unjust enrichment claim against Seitz.

In finding general jurisdiction lacking before, the Court cited Fifth Circuit precedent noting that "the continuous and systematic contacts test [for general jurisdiction] is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)). The new allegations against Seitz, if anything, inch Plaintiffs slightly closer to clearing this high hurdle. But facts showing Seitz's sporadic visits to Texas for live events, indirect income on products reaching Texas through the stream of commerce, and agreements with Jimmy Papa dating back to the 1980s and early 1990s are simply not enough to qualify as regular, systematic, and continuous contacts with Texas. *See, e.g.*, *Helicopteros Nacionales*, 466 U.S. at 414–19.

Nonetheless, the newly-asserted facts are enough to establish specific personal jurisdiction

---

[16] *See Compl.* ¶ 15 (alleging various contacts between Seitz and Texas); Papa Aff. ¶¶ 16–18 (averring Seitz was in Texas to record Badstreet USA's song and music video, and that Seitz signed contracts related to Grand Theft Partners II in Texas); Conveyance of Musical Work, Ex. A of App. Supp. Pl.'s Rep. (contract between Jimmy Papa and Seitz assigning rights in Badstreet USA to Jimmy Papa d/b/a Red Hot Music); Exs. B–D, App. Supp. Pl.'s Rep. (showing Seitz was in Texas for a WWE event and that Seitz is credited in various WWE products).

for purposes of the unjust enrichment claim against Seitz. Since specific jurisdiction "depends on an affiliation between the forum and the underlying controversy," *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012) (internal brackets and quotations omitted), the Court initially considers the nature of Plaintiffs' dispute with Seitz before proceeding to the Fifth Circuit's three-step analysis. The unjust enrichment claim asserted against Seitz is a "quasi-contact" action in which "an obligation is imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000). To establish their claim, Plaintiffs must show that Seitz "has obtained a benefit from [Plaintiffs] by fraud, duress, or the taking of an undue advantage," *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992), or that Seitz "'has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'" *Douglass v. Beakley*, 900 F. Supp. 2d 736, 752 (N.D. Tex. 2012) (quoting *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App. – San Antonio 2004)). Here, Plaintiffs' theory of liability is that Seitz wrongfully listed himself with BMI[17] as publisher of Badstreet USA (and potentially other Copyrighted Works), thereby unlawfully diverting royalties to himself. Am. Compl. ¶¶ 55–56, 227–31. With this in mind, the Court turns to the three-step specific jurisdiction test.

As for the first step, the Court must examine whether Seitz "purposely directed" his conduct at Texas or otherwise "purposely availed [him]self of the privleges of conducting activities there." *McFadin*, 587 F.3d at 759 (quotation marks omitted). The "touchstone" of the analysis here "is

---

[17] "BMI" refers to Broadcast Music, Inc., a company that "collects license fees on behalf of songwriters and music publishers and distributes them to the songwriters and music publishers as royalties." Am. Compl. ¶ 27.

whether the defendant's conduct shows that [he] 'reasonably anticipates being haled into court.'" *Id.* at 759 (quoting *Luv n' care, LTD v. Insta-mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Here, Seitz purposely established a relationship with Jimmy Papa while commuting to Texas in the 1980s, during which time he created and recorded Badstreet USA. This song became Seitz's entrance music as a wrestler and is still significant to his career nearly three decades later.[18] Seitz later signed a contract with Jimmy Papa in Texas, assigning all his rights in Badstreet USA in exchange for long-term royalties paid by Plaintiffs. If a dispute ever arose as to Seitz's right to receive these payments, the contract provided that Texas law governed. *See Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985) ("[C]hoice-of-law provisions warrant some weight in considering whether a defendant has purposely invoked the benefits and protections of a state's laws for jurisdictional purposes."). And this long-term contract was not simply a one-shot deal. Seitz also formed a partnership with Jimmy Papa in Texas for purposes of releasing a compilation of songs they co-wrote, and later signed over his rights in the partnership to Plaintiffs in a contract signed in Texas and containing a Texas choice of law clause. *See Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 383 (5th Cir. 2003) (finding that the defendant "purposely directed its in-state and out-of state activities at a resident of the forum" by, among other things, "establishing a long-term association with that resident"). Finally, when Seitz allegedly re-listed himself as the publisher of Badstreet USA in 1996, he should have been well-aware that the effects of his conduct would be felt by his former partner in Texas. *See Allred v. Moore & Peterson*, 117 F.3d 278, 287 (5th Cir. 1997) (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)) ("'[T]he effects of an alleged intentional [action] are to be assessed as part

---

[18] *See* Ex. C of App. Supp. Pl.'s Resp. (noting that Seitz was introduced at the WWE Hall of Fame in 2009 with Badstreet USA playing).

of the analysis of the defendant's relevant contacts with the forum.'"). Given his Texas-centered business dealings with Plaintiffs, in-state collaboration on Badstreet USA, and out-of-state conduct directed at Texas, "it is only fitting that [Seitz] be amendable to suit in that state." *Luv n' care*, 438 F.3d at 471.

For the second step, the asserted claim must "arise out of or result from the defendant's forum contacts." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 275 (5th Cir. 2006). In other words, there must be a sufficient "nexus between the defendant's contacts and the plaintiff's claims." *ITL Intern*, 669 F.3d at 498 (quotation marks omitted). While Seitz's wrongful conduct in this case—the listing of himself as publisher in BMI and receipt of royalties—appears to have occurred outside of Texas, Plaintiffs rely on Seitz's in-state contacts to establish that the out-of-state conduct was unlawful. Specifically, Plaintiffs allege that Seitz co-wrote and recorded Badstreet USA in Texas (thereby creating any rights to the song while in the state), and that Seitz later assigned all his rights in Badstreet USA (including publishing rights) to Plaintiffs in a contract signed in Texas. These contacts directly relate to Seitz's re-listing of himself as publisher in BMI, and receipt of Badstreet USA royalties in an amount that differed from his agreed-split with Jimmy Papa. Moreover, as discussed before, Seitz's relevant out-of-state conduct caused foreseeable effects (i.e., contacts) on Plaintiffs in Texas. Given the important of these contacts to their unjust enrichment claim, the Court finds that Plaintiffs met their burden of presenting facts tracing a sufficient nexus between Seitz's contacts with Texas and the unjust enrichment cause of action.

Lastly, at step three, "the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv n' care*, 438 F.3d at 473. For a defendant to carry his burden at this step, he "must make a compelling case." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208,

20

215 (5th Cir. 1999). Such a showing is "rare." *Id.* While discussing personal jurisdiction for Defendant WWE,[19] the May 15 Order noted that "Defendants fail to argue that the exercise of jurisdiction would be unreasonable and therefore fail to carry their burden." May 15 Order at 12, *Papa Berg*, 2013 WL 2090547 at *7. In their brief for this Motion, Defendants again focus only on the first two steps of the analysis without addressing the third step. Therefore, the Court finds that the Defendants have failed to show that personal jurisdiction over Seitz would be unfair or unreasonable. As such, the Court concludes that it may lawfully assert personal jurisdiction over the unjust enrichment claim asserted against Seitz.

To recap, the Court found that it lacks personal jurisdiction over Johnston, and therefore denied Plaintiffs' leave to re-assert claims against Johnston as doing so would be "futile" for purposes of Rule 15(a). However, having found personal jurisdiction over Seitz to be proper, the Court rejects Defendants' contention that the Court should deny Plaintiffs's Motion as "futile" on this ground.

### 2.   Untimely Service of Individual Defendants

The Court next examines the second ground cited by the May 15 Order for dismissing Plaintiffs' claims against Seitz: untimely service. Specifically, the Court must determine whether Plaintiffs' prior failure to timely serve the Individual Defendants renders Plaintiffs' claim against Seitz "futile" such that leave should be denied under Rule 15(a).[20]

In the May 15 Order, the Court dismissed Plaintiffs' claims against Seitz (and Johnston) on

---

[19] Though this was in the context of Defendant WWE, searching the Defendants' prior briefing, the Court finds this determination equally applicable to the Individual Defendants.

[20] Since it denied Plaintiffs' Motion as futile as it relates to the claims against Johnston, the Court need not consider the issue of untimely service for the claims against Johnston.

the independent ground that Plaintiffs failed to timely serve the Individual Defendants in accordance with Federal Rule of Civil Procedure 4(m). The Court exercised its discretion under Rule 4(m) to dismiss the claims without prejudice after finding Plaintiffs failed to show good cause for their untimely service.[21]

In the initial brief filed in support of their Motion, Plaintiffs did not address the issue of service. Taking note of Plaintiffs' oversight, Defendants contend that leave should now be denied due to Plaintiffs' renewed failure to show good cause for their untimely service or to otherwise explain why the Court should deviate from the May 15 Order's ruling. Def.'s Resp. 9. In reply, Plaintiffs assert that since the Court has not yet accepted the Amended Complaint, no summons has been issued, and thus "Defendants' complaint regarding service is premature." Pl.'s Rep. 7. While neither argument is persuasive, the Court concludes that requiring Plaintiffs to overcome the deficiency of untimely service would be contrary to the intent of the May 15 Order.

More to the point, the "excuse" Plaintiffs, through their prior attorney, offered for their untimely service was that they "intended to seek discovery from WWE regarding their service information and had not had this opportunity due to WWE's extension for time to respond to the Complaint." May 15 Order at 19, *Papa Berg*, 2013 WL 2090547 at *9. This thin excuse prompted the Court to exercise its discretion under Rule 4(m) to dismiss Plaintiffs' claims even though the Court could have extended the time for service. Nonetheless, requiring Plaintiffs to now show good

---

[21] "Rule 4(m) permits a district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 120 days of filing the complaint." Millan v. USAA Gen. Indem. Co., 546 F.3d 321, 325 (5th Cir. 2008). However, if "the plaintiff can establish good cause for failing to serve the defendant, the court must extend the time for service." *Id.* And even when the plaintiff fails to show good cause, "the court has discretionary power to extend the time for service." *Id.*

cause for their prior counsel's failure to timely serve Seitz would place them in an untenable position, which was not the Court's intention. In dismissing the claims without prejudice due to deficient service, the Court placed Plaintiffs in the same position they were in before the Complaint was filed. *See* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (3d ed. 2002) ("A dismissal without prejudice under Rule 4(m) for failure to serve process is intended to leave the plaintiff in the same position as if the action never had been filed."); Black's Law Dictionary (9th ed. 2009) (defining "dismissed without prejudice" as "removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim"). Granting leave here would do just that by requiring Plaintiffs to now serve Seitz in a timely manner. Consequently the Court determines that Plaintiffs' prior failure to timely serve Seitz does not bar them from re-filing their claims against him. As such, the Court **GRANTS** Plaintiffs' Motion to the extent it seeks leave to amend the Complaint by adding an unjust enrichment claim against Seitz.

C.   *Futility of Contributory Copyright Infringement Claim Against WWE Under Rule 15(a)*

Lastly, the Court must determine whether to deny Plaintiffs' Motion as "futile" under Rule 15(a) to the extent their Motion seeks to re-assert a contributory copyright infringement claim against the WWE. Pursuant to Rule 12(b)(6), the May 15 Order dismissed Plaintiffs' contributory copyright infringement claim against (among others) the WWE for failure to state a claim upon which relief may be granted. Specifically, the Court found that, rather than adequately plead the claim's elements, the Complaint's theory of liability appeared "to be based on the alleged acts of the Defendants that directly infringed [the Copyright Works]." May 15 Order at 22, 2013 WL 2090547 at *11. Defendants contend that the claim is again defective, because the supporting allegations "are the same alleged acts that supposedly directly infringed Plaintiffs' copyrights." Def.'s Resp. 10. The

Court disagrees.

A defendant is liable for contributory copyright infringement "when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Here, the Amended Complaint alleges that the WWE, with knowledge of the infringing activity, induced, caused, or materially contributed to the direct infringement of others by providing copies of infringing works that third parties: distributed, incorporated into video games, and incorporated into ring-tones. Am. Compl. ¶¶ 210–211, 213–214. The Amended Complaint similarly alleges that the WWE provided support to Johnston to develop a derivative of the Copyrighted Works. *Id.* ¶ 212. In contrast, the Amended Complaint alleges that WWE directly infringed on the Copyrighted Works through its public display of the songs in live events, on its website, on television, and in DVDs. *Id.* ¶¶ 122–125. While there is some overlap between the allegations, the Amended Complaint clarifies that the contributory copyright claim is not simply the direct claim's facts summarily re-alleged under a different set of elements. Instead, the claim's supporting allegations are now based on a separate theory and its own set of facts that plausibly show WWE knowingly contributed to the direct infringement of another. Therefore, to the extent Plaintiffs seek leave to re-plead their contributory copyright infringement claim against the WWE, their Motion is **GRANTED**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Leave to Amend (doc. 38). Specifically, the Court **DENIES** the Motion to the extent it seeks leave to re-plead claims against Defendant Johnston, who the Court again finds it lacks

personal jurisdiction over. These claims include one count of direct copyright infringement, one count of vicarious liability for copyright infringement, and one count of unjust enrichment—all against Johnston. For all other claims and allegations, the Motion is hereby **GRANTED**. Thus, Plaintiffs' remaining claims include: one count of direct copyright infringement against Defendants WWE/Stephanie Music, Yuke's, Take Two Interactive, and Gaiam Vivendi Entertainment; one count of vicarious liability for copyright infringement against WWE/Stephanie Music; one count of contributory copyright infringement against WWE/Stephanie Music and Yuke's; and one count of unjust enrichment against WWE/Stephanie Music, Seitz, and Take Two Interactive.

 SO ORDERED.

 SIGNED: November 25, 2013

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE